Ben P. RYBICKI, et al.,
Plaintiffs, Appellees,

v.

John Robert HARTLEY, et al.,
Defendants, Appellees.

Elliot Hospital, Defendant, Appellant.

No. 85–1519.

United States Court of Appeals,
First Circuit.

Argued April 7, 1986.

Decided June 4, 1986.

---

Stephen E. Weyl with whom Elizabeth T. Luster and Sheehan, Phinney, Bass & Green, Professional Association, Manchester, were on brief, for defendant, appellant Elliot Hosp.

James E. Townsend with whom David R. Connell and Larson & Townsend, P.A., Londonderry, were on brief, for plaintiffs, appellees Ben P. Rybicki and Zita Rybicki.

Before BOWNES, BREYER and TORRUELLA, Circuit Judges.

BREYER, Circuit Judge.

This appeal asks us to interpret a statute that, in essence, forbids a hospital from charging Medicare patients anything over and above what Medicare will pay the hospital. In particular, that statute says that "participating providers" of Medicare services, such as the appellant Elliot Hospital, must agree:

> not to charge ... [the Medicare subscriber] ... for items or services for which such individual is entitled to have payments made [by Medicare].

42 U.S.C. § 1395cc(a)(1)(A); *see also* 42 C.F.R. § 489.21(a).

The Elliot Hospital seeks to recover from Ben Rybicki, the appellee, considerably more than the roughly $9,000 the Hospital received from Medicare for treating injuries that Rybicki sustained in an automobile accident. Rybicki argues that § 1395cc bars the Hospital's action. The Hospital believes it can collect from Rybicki. The Hospital argues that Rybicki recovered about $100,000 from the negligent driver and his liability insurer in settlement of legal claims arising out of the accident. Other provisions of the Medicare statute, 42 U.S.C. § 1395y(b)(1), require Rybicki to reimburse Medicare out of the settlement proceeds. And he has done so. Consequently, says the Hospital, the medical services that the Hospital provided Rybicki were not "services for which" Rybicki "is entitled to have payments made [by Medicare]." 42 U.S.C. § 1395cc(a)(1)(A). Viewed *ex post* (after the insurance settlement), Medicare did not pay, and legally could not have paid, the Hospital's bill. Thus, the Hospital, in its view, is free to charge Rybicki the difference between its full $31,000 fee and Medicare's flat fee of $9,000.

The district court rejected the Hospital's argument. And, so do we.

For one thing, though the language of the statute in question is ambiguous, it is certainly consistent with Rybicki's position. The language does not purport to distinguish between *reimbursed* Medicare payments and *unreimbursed* Medicare payments; it speaks only of an entitlement to *some* kind of Medicare payment. Viewed *ex ante* (before the settlement) the services in question were ones for which Rybicki was "entitled to have payments made"; indeed, Medicare made the payments. Thus,

speaking literally, the payments in question fall within the scope of the statute's language.

The language of the provisions which exclude recipients of automobile insurance proceeds from obtaining or retaining Medicare benefits reinforces Rybicki's interpretation of § 1395cc. That language consists of two sentences in 42 U.S.C. § 1395y(b)(1). The first sentence reads:

> Payment ... may not be made with respect to any item or service to the extent that payment has been made, or can reasonably be expected to be made (as determined in accordance with regulations), with respect to such item or service, ... under an automobile or liability insurance policy.

The second sentence reads:

> Any payment ... with respect to any item or service shall be conditioned on reimbursement to [Medicare] ... when notice ... is received that payment for such item or service has been made under such a ... policy.

The first of these sentences says that if one reasonably expects that a private insurer will pay, then a subscriber like Rybicki is not even at first entitled to Medicare. But, as the parties agree (and as government regulations provide), the possibility of a settlement with a liability insurer creates no such expectation. That sentence also says that Medicare cannot pay once Rybicki receives the money from the private insurer. But, here, Medicare paid (and Rybicki was entitled to have the payment made) *before* the insurance company settled Rybicki's claim.

The second sentence says that the insurance money must be used to reimburse Medicare. But, it does not say that Medicare's initial payment was wrong; or that the hospital (on behalf of Rybicki) was not previously entitled to receive it. Taken literally, this language simply says (in respect to a Medicare subscriber with a private source of insurance), 'if we can be reasonably certain that the insurance company will pay, Medicare won't pay; if we cannot be certain, Medicare will pay, but

then, if the company pays you, you must reimburse Medicare.' These provisions are consistent with an interpretation of § 1395cc that includes a prior entitlement to payments for which the subscriber later reimburses Medicare within the words "entitled to have payment made."

For another thing, the narrow issues of statutory construction before us concerns an "interstitial" question, "closely related to the everyday administration of the statute," *Mayburg v. Secretary of Health and Human Services*, 740 F.2d 100, 106 (1st Cir.1984) the type of question as to which the affected government agency is likely to have special, and relevant, insight. *See id.* Under these circumstances, and in the face of ambiguous statutory language, we must pay special attention to the views of the Department of Health and Human Services (HHS), which administers the Medicare system. *Chevron USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *FEC v. Democratic Senatorial Campaign Committee*, 454 U.S. 27, 102 S.Ct. 38, 70 L.Ed.2d 23 (1981); *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980); *cf. Bureau of Alcohol, Tobacco, and Firearms v. Federal Labor Relations Authority*, 464 U.S. 89, 104 S.Ct. 439, 78 L.Ed.2d 195 (1983). HHS says, in a memorandum filed in the district court, that Rybicki's view of the statute is correct.

Moreover, this literal interpretation makes sense in terms of the relevant statutory purposes. It furthers one apparent objective of the "no additional charge" provision of § 1395cc, namely, protecting the subscriber's pocketbook. Where, as here, a subscriber negotiates for payment with a third party liability insurer, any additional payment to the hospital likely means (to some degree) a smaller settlement remainder left to compensate the subscriber for his injury. This literal interpretation also is consistent with *guaranteeing* payment to the hospital—the *quid* for which the hospital's "no additional payment" promise was in part the *quo*. (Where private cover-

age is uncertain Medicare pays; where coverage is certain, Medicare is not needed.) *See* 42 C.F.R. § 405.324(a)(3)(ii) (Medicare may recoup payments from hospital but only if it has received payment from private insurer). It maintains Medicare's cost-incentive payment structure—a system that limits hospitals to a flat Medicare fee for particular services, regardless of actual costs. *Hultzman v. Weinberger*, 495 F.2d 1276, 1280 (3rd Cir.1974); *see* 42 U.S.C. § 1395u(b)(2). It is equally consistent with the statutory "reimbursement" provisions, 42 U.S.C. § 1395y, for the object of those provisions is to assure a fair settlement between Medicare and the subscriber—that is, to prevent subscriber windfalls, not to create new financial obligations running from the subscriber to the hospital. *Cf. Gordon v. Forsythe County Hospital Authority*, 409 F.Supp. 708, 719 (M.D.N.C.1975), *vacated in part on other grounds*, 544 F.2d 748 (4th Cir.1976) (per curiam); *Holle v. Moline Public Hospital*, 598 F.Supp. 1017, 1020–21 (C.D.Ill.1984); *see also* 42 C.F.R. § 405.324(b)(1) (attorneys' fees and court costs incurred in recovering from liability insurer apportioned between subscriber and Medicare).

Finally, we disagree with the Hospital's claim that our interpretation will create significant statutory anomalies. The Hospital first mentions that, when Medicare pays in error, the Hospital remains free to collect its full charges; and it then analogizes reimbursed payments to erroneous ones. *Mount Sinai Hospital of Greater Miami, Inc. v. Weinberger*, 517 F.2d 329, *modified*, 522 F.2d 179 (5th Cir.1975), *cert. denied*, 425 U.S. 935, 96 S.Ct. 1665, 48 L.Ed.2d 176 (1976). The Hospital's attempt to analogize reimbursed payments to erroneous payments, however, is inapposite. A Medicare beneficiary is in no sense "entitled" to have errors made in his favor. Thus, whether the hospital may recover its actual charges when an *error* creates a windfall for the beneficiary (a question we do not address) is beside the point. *See Mount Sinai Hospital v. Weinberger*, 522 F.2d at 179 (as modified on petition for rehearing). Here, the Medicare statute

and regulations explicitly provide for payments like the one paid on Mr. Rybicki's behalf. He was "entitled" to the protection of Medicare, albeit conditionally. The fact that later events permitted the government to recover its payment cannot change this fact.

The Hospital argues that had the liability insurer settled Rybicki's claim immediately, no Medicare payment would have been made and it would have been free to charge its full fee. This fact, while true, is not anomalous, for in that case, the subscriber *never* became entitled to Medicare funds, and for reasons pointed out above, it is less likely that the need to guarantee payment to the hospital, or the desire to protect subscribers' pocketbooks, would then have been relevant.

The Hospital also says that sometimes Medicare's flat fee exceeds the Hospital's private charge; Medicare might, for example, pay $9,000 for services for which the Hospital would otherwise bill $5,000. In such a circumstance, our interpretation might cost the subscriber money. Logically speaking this is so; but, we do not believe the 'anomaly' is significant. Given Medicare's cost-cutting objectives, the government's superior bargaining power, and the premium built into "actual charges" to cover collection problems, and given the hospital's freedom to charge private parties as much as it charges Medicare, these cases would seem rare. Nothing in the record (or in HHS's memorandum) suggests they arise frequently.

For these reasons we agree with the interpretation that HHS, the district court, and the only other court to consider the issue, have placed upon this statutory language. *See Holle v. Moline Public Hospital*, 598 F.Supp. at 1021. The decision of the district court is

*Affirmed.*