1 F.3d 540
 42 Soc.Sec.Rep.Ser. 12, Medicare&Medicaid Gu 41,566
EVANSTON HOSPITAL, Plaintiff-Appellant,
v.
Robert V. HAUCK, Louis W. Sullivan, Secretary of the United
States Department of Health and Human Services, Phillip
Bradley, Director of Illinois Department of Public Aid, et
al., Defendants-Appellees.
 No. 92-3551.
 United States Court of Appeals,
Seventh Circuit.
 Argued May 7, 1993.
Decided July 30, 1993.
 
 Ronald J. Hennings, Raymond E. Clutts, Paul A. Grabowski (argued) and Leonard D. Saphire-Bernstein, Grabowski & Clutts, Evanston, IL, for plaintiff-appellant.
 Thomas A. Demetrio, Michael G. Mahoney (argued), Corboy & Demetrio; Shirley M. Michaelson (argued), Dept. of Health and Human Services, Region V, Office of the Gen. Counsel; Michele M. Fox, Asst. U.S. Atty., Office of the U.S. Atty., Civ. Div., Appellate Section; and James C. O'Connell, Asst. Atty. Gen., David Adler (argued) and William O. Arnold, III, Office of the Atty. Gen., Chicago, IL, for defendants-appellees.
 Before BAUER, Chief Judge, and CUMMINGS and EASTERBROOK, Circuit Judges.
 CUMMINGS, Circuit Judge.
 
 
 1
 After coming in contact with a live electrical wire, Robert V. Hauck landed in Evanston Hospital and stayed there for more than a year, running up a bill of $270,760.24. He could not pay it and apparently did not have private health insurance to pay it for him. The hospital decided to accept partial reimbursement of $113,424 from Medicaid, the government-run health care insurance program for indigents, which in Illinois is administered by the state Department of Public Aid ("IDPA"). The hospital's acceptance of the money from Medicaid was conditioned on the understanding that it would be payment in full--whatever claims the hospital might have had against Hauck were relinquished to IDPA. Then Hauck won a $9.6 million judgment in a lawsuit stemming from his accident. Hauck's newfound wealth caused Evanston Hospital to regret the deal it had made with Medicaid. The hospital now wants to give back to IDPA the $113,424 it earlier accepted as payment in full so that it can sue Hauck for the $270,760.24 it originally sought. The hospital attempts to justify reneging on its agreement with IDPA by claiming that Illinois law is in conflict with federal law. It isn't. The district court dismissed the hospital's suit for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and we affirm.
 
 
 2
 Under Illinois law, when Medicaid pays money to a hospital on behalf of an individual, it "shall constitute payment in full for the goods or services covered thereby. Acceptance of the payment by or on behalf of the vendor [hospital] shall bar him from obtaining, or attempting to obtain, additional payment therefor from the recipient or any other person." 305 ILCS 5/11-13.[1] The Illinois Administrative Code states the rule explicitly: "The provider [hospital] shall agree to * * * [A]ccept as payment in full the amounts established by [IDPA] * * *." Ill.Admin.Code tit. 89, Sec. 140.12(h) (1993).
 
 
 3
 Evanston Hospital first argues that by refusing to accept its offer of a refund, IDPA has forced the hospital to abandon its lien on Hauck's property. But Evanston Hospital was not "forced" to abandon its right to sue Hauck; no one coerced the hospital into cashing a $113,424 check from the taxpayers as partial reimbursement for Hauck's medical bills. Rather, the hospital could have simply forsaken Medicaid and taken its chances that Hauck would somehow come up with the money to pay the bills himself. By opting for reimbursement from Medicaid, Evanston Hospital bought certainty. It purchased a guarantee of partial payment in lieu of possibly full payment or possibly no payment at all. Risk-averse companies that are owed money (or which do not want the hassle) make this same deal all the time with collection agencies--something secure is traded for a crack at a higher sum. Evanston Hospital wants out of its agreement with Medicaid now only because its gamble, in retrospect, was unwise.
 
 
 4
 Evanston Hospital's position would not be so far-fetched if it could prove that its contract with IDPA were somehow invalid--say, if it were against public policy. Thus plaintiff argues that Illinois law and procedures regarding Medicaid conflict with federal law, are invalid and should not be enforced. As best we can discern from the hospital's briefs and from the position taken by counsel at oral argument, Medicaid must be the payor of last resort; that is, Medicaid can only pay a medical bill when every other possible source has been exhausted. Here, since it was later determined that Hauck himself could pay because of his multi-million dollar tort judgment, IDPA should not have reimbursed Evanston Hospital. And if IDPA should never have paid Evanston Hospital, then of course there is no harm in allowing the hospital to refund IDPA's money so that it can sue Hauck. In plaintiff's view, the Illinois law requiring hospitals to accept money from Medicaid only as full and final payment is in conflict with the federal requirement that Medicaid be the payor of last resort. It posits that the only way to resolve the conflict is to rewrite the Illinois Medicaid law--by reinterpreting the phrase "any other person" to exclude third parties--to allow hospitals and other providers to go after proceeds from tortfeasors even after the providers have accepted government reimbursement.
 
 
 5
 The logic behind this argument is elusive. First, the federal statutes cited by the hospital do not actually say that Medicaid must be the payor of last resort. Indeed, at no point in the law governing Medicaid are states directed not to pay for services where the patient is or may be entitled to payments by a third party. Plaintiff, for example, cites 42 U.S.C. Sec. 1396b(o ), but this provision only says that a state should not pay medical bills where a private insurer would normally be responsible except for a clause in the insurance contract excusing the company's obligations if the government will pay instead. This provision is merely designed to keep insurance companies from shifting responsibility onto the government by contractual fiat, and is utterly inapplicable to these circumstances where Hauck did not even have private insurance. Evanston Hospital's brief cites other administrative commentaries but these are similarly beside the point.
 
 
 6
 In any event, Medicaid was the payor of last resort at the time Hauck's medical bills came due. Hauck was released from the hospital on November 14, 1986. It was not until December of 1991 that Hauck prevailed on his tort claim. When IDPA agreed to pay $113,424 for Hauck's care and Evanston Hospital agreed to accept that sum as total payment, Hauck's $9.6 million award was merely a gleam in the eye of a personal injury lawyer. Even if there were a payor-of-last-resort requirement in Medicaid law, it could not have the meaning plaintiff proposes because there will always be some possibility that an indigent patient will emerge victorious in a future lawsuit, win the lottery, strike gold, or land a good job and save some money. Under plaintiff's reading of Medicaid law, no state administrative agency could ever qualify as a Medicaid payor of last resort because alternative sources of reimbursement might later emerge.
 
 
 7
 More to the point, Evanston Hospital misconstrues the notion of what it means to be a payor of last resort. To the extent such a concept is implicit in the federal statute, it means that the government itself should not be stuck paying medical bills when another source is available, not that hospitals and doctors should reap a windfall at the government's expense. Thus both federal and Illinois law agree that once Medicaid has paid for medical services, IDPA is obliged to vigorously pursue any third party who might bear some legal responsibility for footing the bill. Under federal law, a state must:
 
 
 8
 take all reasonable measures to ascertain the legal liability of third parties (including health insurers) to pay for care and services available under the plan * * * [and] in any case where such a legal liability is found to exist after medical assistance has been made available on behalf of the individual and where the amount of reimbursement the State can reasonably expect to recover exceeds the cost of such recovery, the State or local agency will seek reimbursement for such assistance to the extent of such legal liability.
 
 
 9
 42 U.S.C. Sec. 1396a(a)(25)(A)-(B) (emphasis added). The statute does not say anything about turning over this right of reimbursement to the hospitals and doctors who have already received some compensation for their services. Again, Congress' intent that state Medicaid agencies, not hospitals or doctors, seek reimbursement from third parties is evident in another section of the Medicaid statute that requires indigent recipients of benefits to assign to the government whatever rights they might have in payment for medical care from other sources. 42 U.S.C. Secs. 1396a(a)(45) and 1396k(a). If this arrangement is not acceptable to doctors and hospitals, they should not take Medicaid money in the first instance.
 
 
 10
 Plaintiff's assertion that states may not condition Medicaid disbursements on the understanding that payments are full and final is directly contradicted by the federal statute: "[I]n the case of an individual who is entitled to medical assistance under the State plan with respect to a service for which a third party is liable for payment, the person furnishing the services may not seek to collect from the individual (or any financially responsible relative or representative of that individual) payment of any amount for that service * * *." 42 U.S.C. Sec. 1396a(a)(25)(C). What Evanston Hospital seeks, then, is to turn Medicaid upside down by converting the system into an insurance program for hospitals rather than for indigent patients. It wants to be reimbursed when the patient is indigent and still retain the right to sue patients who later become solvent--a classic example of wanting to both have and eat cake. The Medicaid system would go bankrupt in short order under this scenario because hospitals would have every incentive to capture as much government money as they could without regard for the probabilities of collecting reimbursement from the private party.
 
 
 11
 Hauck also received a few thousand dollars worth of out-patient services after his release from Evanston Hospital which were paid for not by Medicaid but by Medicare, the federally run health care insurance program for the elderly and disabled.[2] The Medicare law, unlike the Medicaid statute, forbids payment where a third party can reasonably be expected to make prompt payment. 42 U.S.C. Sec. 1395y(b)(2). This is known as the Medicare Secondary Payer provision. Like Medicaid, however, once the government has paid, the hospital or doctor accepting the money agrees to abandon all rights to further payment. Rybicki v. Hartley, 792 F.2d 260, 262 (1st Cir.1986). The Medicare Secondary Payer provision is intended to keep the government from paying a medical bill where it is clear an insurance company will pay instead. Id. The point is not to give doctors and hospitals an ongoing right to return Medicare's money when it becomes expedient. Here again, Evanston Hospital alleges that Medicare should not have paid Hauck's bill in the first instance because his lawsuit assured there would be future third-party payment. And if Medicare should not have paid the bill to begin with, Evanston Hospital contends there would be no harm in allowing it to refund the money to the government so that it can sue Hauck personally. The Medicare Secondary Payer provision does not apply in these circumstances, however, because a tort judgment five years in the future can in no sense be considered the kind of certain, prompt third-party payment Congress had in mind when it wrote the Medicare statute.
 
 
 12
 There is recourse against Hauck for the cost of his care, but the recourse belongs to the government, not to Evanston Hospital. It is true that under our decision today Hauck receives a windfall equal to the value of the medical care he received but for which the government did not pay. But someone was bound to receive a windfall in these circumstances, and Congress decided it should be the recipient of medical care, not the hospital.
 
 
 13
 The district court's judgment is affirmed.
 
 
 
 [1]
 This provision used to be numbered as Ill.Rev.Stat.1991, ch. 23, Sec. 11-13
 
 
 [2]
 The parties dispute how much the hospital billed Medicare and how much the program paid. The amounts are not significant to our resolution of the issues in the case, although the Secretary of Health and Human Services contends that Medicare, which pays by the service rendered rather than the hospital's billing rate, actually paid Evanston Hospital more than requested because of the program's fixed reimbursement scheme