693 So.2d 562 (1996)
THE PUBLIC HEALTH TRUST OF DADE COUNTY, FLORIDA, an agency and instrumentality of Dade County, Florida, which operates Jackson Memorial Hospital, Appellant,
v.
DADE COUNTY SCHOOL BOARD, et al., Appellees.
No. 95-1457.
District Court of Appeal of Florida, Third District.
November 27, 1996.
Rehearing Denied June 4, 1997.
*563 Robert A. Ginsburg, Dade County Attorney, and Jack P. Hartog and Sara A. Price, Assistant County Attorneys, for appellant.
Peters, Robertson, Lax, Parsons, Welcher, Mowers & Passaro, Geralyn M. Passaro and Gracian A. Celaya, Fort Lauderdale, for appellee Dade County School Board.
Kuvin Lewis Restani & Stettin and R. Fred Lewis, Miami, for appellee Goldfarb & Gold, P.A.
Moses E. Williams, Tallahassee, for The Agency for Health Care Administration as amicus curiae.
Caruso, Burlington, Bohn & Compiani and Philip M. Burlington, West Palm Beach for Academy of Florida Trial Lawyers as amicus curiae.
Before COPE, GERSTEN and GODERICH, JJ.
GODERICH, Judge.
The Public Health Trust of Dade County, an agency and instrumentality of Dade County, Florida, which operates Jackson Memorial Hospital [JMH], appeals from an adverse final summary judgment. The central issue presented by this appeal is whether a medical provider, after applying for and accepting Medicaid payments, may later apply to its charges any excess third-party benefits that it collects after Medicaid has been made whole. We find, as did the trial court, that the medical provider cannot.
In October 1989, Kevin Johnson was hit by an automobile near a Dade County elementary school while enrolled in an after-school program. Kevin, who sustained severe spinal cord injuries, was treated at JMH for nearly twenty-two months. Afterwards, Kevin was placed in a personal care facility where he later died.
In June 1991, JMH filed its hospital claim of lien for $1,253,442.11, the amount then due. Upon discharge, JMH's bill totaled $1,374,956.19. JMH applied for, received, and accepted Medicaid payments totaling $295,819.17 for the medical assistance rendered to Kevin.
In 1990, Joanne Adside [Adside], as mother and guardian of Kevin Johnson, sued the Dade County School Board [School Board] for negligence. Upon learning of the lawsuit, *564 in October 1991, JMH filed a Notice of Hospital Lien in that suit. In November 1991, JMH's counsel orally agreed with Adside's counsel, Goldfarb & Gold, P.A., to reduce the claim of lien from $1,374,956.19 to $500,000.00. This agreement was allegedly based on Goldfarb & Gold's representation that the total settlement with the School Board would be approximately $2,200,000.00, which would include their attorney's fees of $200,000.00. JMH also agreed that it would repay Medicaid from the $500,000.00 it received.
JMH later learned that the settlement was actually for $2,741,938.00 and that Goldfarb & Gold would actually receive $600,000.00 in attorney's fees. In December 1991, final judgment was entered outlining the parties' settlement. The final judgment provided that judgment would be entered against the School Board in the amount of $2,741,938.00 and that the School Board would seek passage of a claims bill during the 1992 legislative session in the amount of $2,541,938.00, the claims bill to be $200,000.00 less than the judgment entered against the School Board due to the partial waiver of the county's sovereign immunity. See § 768.28, Fla.Stat. (1995).
The claims bill was approved in April 1992. In May 1992, Goldfarb & Gold sent JMH $500,000.00 in settlement of JMH's lien. In June 1992, JMH rejected the $500,000.00 due to the alleged misrepresentations that had occurred during settlement negotiations regarding the amount that Goldfarb & Gold would receive for attorney's fees.
JMH sued the School Board and Adside for impairment of its lien. JMH sought only the initial $500,000.00 settlement and the $600,000.00 paid to Goldfarb & Gold in attorney's fees. The School Board and Adside filed motions for summary judgment arguing that payment by Medicaid to JMH for Kevin's treatment constituted "payment in full," and that therefore, JMH was prohibited from collecting any additional amounts. See 42 C.F.R. § 447.15 (1995); § 409.907(3)(j), Fla. Stat. (1989). In opposition, JMH argued that regulation 59G-7.055(6), Florida Administrative Code, permits providers, such as JMH, to seek recovery of any third-party benefits on behalf of Medicaid and after Medicaid has been made whole, "any excess third-party benefits collected by a provider are permitted to be applied to provider charges that exceed Medicaid payment...." Fla.Admin.Code R. 59G-7.055(6) (formerly numbered as 10C-35.056). The trial court granted Adside's and the School Board's motions for summary judgment and entered final summary judgment. This appeal now follows.
The State of Florida elected to participate in the Medicaid program, Title XIX of the Social Security Act, 42 U.S.C. § 1396 et seq. (1994), which provides federal funds to states for the purpose of providing medical assistance to needy persons. However, once the State of Florida elected to participate in the Medicaid program, its medical assistance plan must comply with the federal Medicaid statutes and regulations. Harris v. McRae, 448 U.S. 297, 301, 100 S.Ct. 2671, 2680, 65 L.Ed.2d 784, 794 (1980); Palumbo v. Myers, 149 Cal.App.3d 1020, 197 Cal.Rptr. 214 (Dist. Ct.App.1983); see also Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 501, 110 S.Ct. 2510, 2513, 110 L.Ed.2d 455 (1990) ("Although participation in the program is voluntary, participating States must comply with certain requirements imposed by the [Medicaid] Act and regulations promulgated by the Secretary of Health and Human Services...."); Florida v. Mathews, 526 F.2d 319, 326 (5th Cir.1976) ("Once a state chooses to participate in a federally funded program, it must comply with federal standards."). Further, under the Supremacy Clause, if a state law actually conflicts with a federal statute or regulation, the state law is invalid. See U.S. Const. art. VI, cl. 2; Hillsborough County, Fla. v. Automated Med. Lab., Inc., 471 U.S. 707, 712-13, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985); Ohio State Pharmaceutical Ass'n v. Creasy, 587 F.Supp. 698, 705 (S.D.Ohio 1984); Department of Revenue v. Wardair Canada, Ltd., 455 So.2d 326, 328-29 (Fla.1984), affirmed, 477 U.S. 1, 106 S.Ct. 2369, 91 L.Ed.2d 1 (1986); Phillips v. General Fin. Corp. of Fla., 297 So.2d 6, 8 (Fla. 1974).
One of the requirements of the federal Medicaid program, as provided by 42 C.F.R. § 447.15 (1995), is that "[a] State plan must *565 provide that the Medicaid agency must limit participation in the Medicaid program to providers who accept, as payment in full, the amounts paid by the agency plus any deductible, co-insurance or co-payment required by the plan to be paid by the individual...." 42 C.F.R. § 447.15 (emphasis added). In compliance with this federal regulation, section 409.907(3)(j), Florida Statutes (1989), provides as follows:
(3) The provider agreement developed by the department ... shall require the provider to:
(j) Accept Medicaid payment as payment in full, and prohibit the provider from billing or collecting from the recipient or the recipient's responsible party any additional amount except, and only to the extent the department permits or requires, copayments, coinsurance, or deductibles to be paid by the recipient for the services or goods provided. The Medicaid payment-in-full policy does not apply to services or goods provided to a recipient if the services or goods are not covered by the Medicaid program.
§ 409.907(3)(j), Fla.Stat. (1989) (emphasis added). This type of restriction is commonly referred to as the prohibition against "balance billing." Palumbo, 197 Cal.Rptr. at 218.
Further, the federal Medicaid program also requires that the participating state or the state agency administering the plan ascertain whether any third party is legally liable for the medical services and goods furnished to the Medicaid patient and seek reimbursement from the third party if the reimbursement that the state expects to recover exceeds the cost of recovery. 42 U.S.C. § 1396a(a)(25) (1994); 42 C.F.R. § 433.138 (1995); 42 C.F.R. § 433.139(d) (1995); see also New York State Dept. of Social Servs. v. Bowen, 684 F.Supp. 775, 777-78 (E.D.N.Y.1988); Palumbo, 197 Cal.Rptr. at 218. Moreover, 42 C.F.R. § 433.154 (1995) regulates the manner in which the state agency administering the Medicaid program must distribute third-party liability benefits that are collected. Specifically, 42 C.F.R. § 433.154 provides as follows:
"The agency must distribute collections as follows
(a) To itself, an amount equal to State Medicaid expenditures for the individual on whose right the collection was based.
(b) To the Federal Government, the Federal share of the State Medicaid expenditure, minus any incentive payment made in accordance with [42 C.F.R.] § 433.153.
(c) To the recipient, any remaining amount...."
In furtherance of the federal third-party liability provisions, Florida's "Medicaid Third-Party Liability Act," section 409.2665, Florida Statutes (Supp.1990) (renumbered as Section 409.910(1), Florida Statutes (1991)), provides that
[i]t is the intent of the Legislature that Medicaid be the payer of last resort for medically necessary goods and services furnished to Medicaid recipients. All other sources of payment for medical care are primary to medical assistance provided by Medicaid. If benefits of a liable third party are discovered or become available after medical assistance has been provided by Medicaid, it is the intent of the Legislature that Medicaid be repaid in full and prior to any other person, program, or entity. Medicaid is to be repaid in full from, and to the extent of, any third-party benefits, regardless of whether a recipient is made whole or other creditors paid. Principles of common law and equity as to assignment, lien, and subrogation are to be abrogated to the extent necessary to ensure full recovery by Medicaid from third-party resources. It is intended that if the resources of a liable third party become available at any time, the public treasury should not bear the burden of medical assistance to the extent of such resources.
Further, section 409.2665(5), Florida Statutes (Supp.1990), provides, in pertinent part, that
[a]fter the department has provided medical assistance under [the Medicaid program], it shall seek recovery of reimbursement from third-party benefits to the limit of legal liability and for the full amount of third-party benefits, but not in excess of *566 the amount of medical assistance paid by Medicaid....
(emphasis added).
In the instant case, JMH sought to recover third-party benefits in excess of the amount of medical assistance paid by Medicaid pursuant to regulation 59G-7.055(6), Florida Administrative Code. Regulation 59G-7.055(6) provides as follows:
[w]hen the agency is made whole, upon the agency's recovery of the full amount of medical assistance paid or obligated to be paid by Medicaid, including both the full state share and federal share of medical assistance payments, any excess third-party benefits collected by a provider are permitted to be applied to provider charges that exceed Medicaid payment ....
(emphasis added). In other words, this regulation specifically permits a provider, such as JMH, to collect third-party benefits and after Medicaid has been "made whole," to apply the remaining amounts that it collected to its charges.
Clearly, this state administrative regulation is in direct conflict with federal medicaid laws and the state statute which provide that when a medical provider accepts payment from Medicaid, such payment constitutes "payment in full." Because this state administrative regulation is in direct conflict with federal law, the state administrative provision is invalid under the Supremacy Clause. See generally Pennsylvania Medical Soc'y v. Marconis, 942 F.2d 842, 848 (3d Cir.1991); Tarver v. State, Dept. of Health & Rehabilitative Servs., Div. of Social & Economic Servs., 371 So.2d 190, 192 (Fla. 4th DCA 1979).
This finding is consistent with cases from other jurisdictions. In Evanston Hospital v. Hauck, 1 F.3d 540 (7th Cir.1993), cert, denied, 510 U.S. 1091, 114 S.Ct. 921, 127 L.Ed.2d 215 (1994), Mr. Hauck was involved in an accident and as a result, was a patient at Evanston Hospital for more than a year. Evanston Hospital accepted reimbursement from Medicaid for medical services rendered on behalf of Mr. Hauck. After accepting reimbursement from Medicaid, Mr. Hauck received a $9.6 million dollar verdict for injuries stemming from the accident. Evanston Hospital filed suit against the state Medicaid agency seeking to refund the Medicaid payment that it accepted as "payment in full" so that it could seek directly from Mr. Hauck its complete hospital charges. In affirming the trial court's order dismissing the action, the Seventh Circuit stated as follows:
Evanston Hospital was not "forced" to abandon its right to sue Hauck; no one coerced the hospital into cashing a $113,424 check from the taxpayers as partial reimbursement for Hauck's medical bills. Rather, the hospital could have simply forsaken Medicaid and taken its chances that Hauck would somehow come up with the money to pay the bills himself. By opting for reimbursement from Medicaid, Evanston Hospital bought certainty. It purchased a guarantee of partial payment in lieu of possibly full payment or possibly no payment at all. Risk-averse companies that are owed money (or which do not want the hassle) make this same deal all the time with collection agenciessomething secure is traded for a crack at a higher sum. Evanston Hospital wants out of its agreement with Medicaid now only because its gamble, in retrospect, was unwise.
. . . . .
What Evanston Hospital seeks, then, is to turn Medicaid upside down by converting the system into an insurance program for hospitals rather than for indigent patients. It wants to be reimbursed when the patient is indigent and still retain the right to sue patients who later become solventa classic example of wanting to both have and eat cake.
Evanston Hosp., 1 F.3d at 542, 544.
Similarly, in Palumbo v. Myers, 149 Cal. App.3d 1020, 197 Cal.Rptr. 214 (Dist.Ct.App. 1983), a physician treated a Medicaid patient and received payment from Medicaid. As is the usual scenario with Medicaid patients, the payment received from Medicaid was less than his usual and customary fee. Thereafter, the patient recovered a settlement from a third-party tortfeasor, and the settlement allotted funds for payment to the physician for the balance of his usual and customary *567 fee. The physician brought a declaratory action arguing that he was entitled to the full payment of his usual and customary fee since the patient recovered a settlement from a third-party tortfeasor. The Palumbo court held that a provider of Medicaid services "may not `balance bill' under any circumstances where the service in question was a covered benefit of the [Medicaid] program as to that beneficiary." Palumbo, 197 Cal.Rptr. at 217; see also Serafini v. Blake, 167 Cal. App.3d Supp. 11, 213 Cal.Rptr. 207 (Dep't 1985).
As recognized by the court in Evanston Hospital, it is true that Kevin's estate "receives a windfall equal to the value of the medical care [Kevin] received but for which the government did not pay. But someone was bound to receive a windfall in these circumstances, and Congress decided it should be the recipient of medical care, not the hospital." Evanston Hosp., 1 F.3d at 544.
Therefore, because the state administrative regulation is in direct conflict with federal Medicaid law, and federal law preempts the conflicting state administrative regulation, we find that JMH is precluded from "balance billing" although the recipient of the Medicaid services received a substantial settlement from a third-party tortfeasor.
Affirmed.