**Derrick LIZER and Natasha Kirk Plaintiffs,**

v.

**EAGLE AIR MED CORPORATION, Defendant.**

**No. CV. 02–1596 PCT RCB.**

United States District Court, D. Arizona.

Jan. 28, 2004.

Daniel Mark Rosenfelt, Esq, Rosenfelt Buffington & Borg PA, Albuquerque, NM, for Plaintiffs.

Gary G Sackett, Jones Waldo Holbrook & McDonough PC, Salt Lake City, UT, for Defendant.

## ORDER

BROOMFIELD, Senior District Judge.

On August 19, 2002, Plaintiffs brought this action seeking a declaration of their rights regarding a lien Eagle Air Med Corp. ("Eagle Air") placed on uninsured motorist insurance proceeds payable to Plaintiffs. Compl. (doc. # 1). Plaintiffs argue that federal Medicaid law preempts the state law under which Defendant filed its lien. Memo in Sup. of Pla.'s Mot. for Sum. Judg. ("MSPMSJ") (doc. # 16). This issue is before the Court on cross motions for summary judgment. Mot. (doc. # 15); Cross Mot. (doc. # 20). After considering all the arguments the Court is now prepared to rule.

### I. Facts

In January of 2001 Plaintiffs were in a serious car accident. MSPMSJ (doc. # 16) ¶ 2. They were transported to a hospital by Eagle Air's air ambulance service. *Id.* Eagle Air's bill for this service was a total of $22,415. Cross Mot. (doc. # 20) ¶ 4. However, the individual who caused the car accident, Jesse Thomas, had no automobile insurance. MSPMSJ (doc. # 16) ¶ 2. Plaintiffs were eligible participants of the Arizona Health Care Cost Containment System (AHCCCS) through which Arizona administers Medicaid funds. *Id.* ¶ 8. Eagle Air received $4,827.68 from AHCCCS on behalf of Plaintiffs as payment for the air ambulance service. *Id.*

Plaintiffs made a claim for uninsured motorist compensation with their own carrier, Farmers Insurance Group. Cross Mot. (doc. # 20) ¶ 7. Upon discovering this Eagle Air filed a "Notice and Claim of Health Care Provider Lien" for the total amount of their initial bill, $22,415. *Id.* ¶ 10. Farmers settled the Plaintiffs'

claims for a total of $41,710. *Id.* ¶ 11. Plaintiffs filed this lawsuit disputing the validity and amount of Eagle Air's lien. Compl. (doc. # 1). Plaintiff moved for partial summary judgment on the issue of whether federal law prohibits Eagle Air from availing itself of the state lien statute in this situation. Mot. (doc. # 15). Eagle Air responded with a cross-motion for summary judgment. Cross Mot. (doc. # 20).

### II. Legal Standard

To grant summary judgment, the Court must determine that the record before it contains "no genuine issue as to any material fact" and, thus, "that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining whether to grant summary judgment, the court will view the facts and inferences from these facts in the light most favorable to the nonmoving party. *See Matsushita Elec. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A material fact is any factual dispute that might affect the outcome of the case under the governing substantive law. *Id.* at 248, 106 S.Ct. 2505. A factual dispute is genuine if the evidence is such that a reasonable jury could resolve the dispute in favor of the nonmoving party. *Id.* A party opposing a motion for summary judgment cannot rest upon mere allegations or denials in the pleadings or papers, but instead must set forth specific facts demonstrating a genuine issue for trial. *See id.* at 250,

106 S.Ct. 2505. Finally, if the nonmoving party's evidence is merely colorable or is not significantly probative, a court may grant summary judgment. *See, e.g., California Architectural Build. Prods., Inc. v. Franciscan Ceramics,* 818 F.2d 1466, 1468 (9th Cir.1987).

Both parties to this action have moved for summary judgment on the issue of whether federal law prevents Eagle Air from enforcing its lien pursuant to Arizona state law. Since the facts regarding this issue are undisputed the Court need only determine whether these facts entitle either party to judgment as a matter of law.

## III. Preemption

■ As a preliminary matter the Court must determine whether Plaintiffs may even raise the preemption issue. In their reply and response Plaintiffs set forth the argument that 42 U.S.C. § 1983 provides them with a private cause of action. Pla.'s Reply (doc. # 25) at 1. Eagle Air objected to the fact that this argument appeared for the first time in the reply and the fact that it was based on the Second Amended Complaint which had not been filed when Plaintiffs' Motion for Partial Summary Judgment was filed. Def.'s Reply (doc. # 29) at 2–3. However, these issues need not be addressed in order to resolve the motions before the Court. The Ninth Circuit has held that a private party may seek declaratory relief on the basis of federal preemption even when there is no statutory provision which explicitly establishes a private cause of action. *See Bernhardt v. Los Angeles County,* 339 F.3d 920, 929 (9th Cir.2003); *Bud Antle, Inc. v. Barbosa,* 45 F.3d 1261, 1269 (9th Cir.1994); *see also Golden State Transit Corp. v. City of Los Angeles,* 493 U.S. 103, 107–08, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989).

The Supremacy Clause of the United States Constitution dictates that where federal and state law conflict, the state law is preempted and may not be applied. *E.g. Bernhardt,* 339 F.3d at 929 (quoting *Nat'l Audubon Soc'y v. Davis,* 307 F.3d 835, 851 (9th Cir.2002)). When state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" there is conflict preemption and the state law is nullified. *Id.* (quoting *Ting v. AT&T,* 319 F.3d 1126, 1135 (9th Cir.2003)). Plaintiffs argue that Arizona law which permits Eagle Air to file its lien against their uninsured motorist insurance proceeds is preempted by federal law. A close examination of both the state and federal law involved is necessary to determine if preemption is appropriate in this case.

### A. Federal Medicaid Law

The federal laws which Plaintiffs argue preempt the state lien law are provisions concerning what is referred to as "balance billing." These provisions mandate that state programs which receive Medicaid funds must only distribute those funds to providers who agree to accept those funds as payment in full and not bill individual patients for the difference between the amount paid by the state and the provider's customary charge. *See* 42 U.S.C. § 1396a(a)(25)(c); 42 C.F.R. § 447.15. The applicable statute specifically states that when a person receives Medicaid assistance for a service rendered for which a third party is liable the provider:

> may not seek to collect from the individual (or any financially responsible relative or representative of that individual) payment of an amount for that service (i) if the total of the amount of the liabilities of third parties for that service is at least equal to the amount payable for that service under the plan....

42 U.S.C. § 1396a(a)(25)(C). The accompanying regulation requires that "[a] state plan must provide that the Medicaid agen-

cy must limit participation in the Medicaid program to providers who accept, as payment in full, the amounts paid by the agency plus any deductible, coinsurance or copayment required by the plan to be paid by the individual." 42 C.F.R. § 447.15.

### B. Arizona Law

In compliance with federal law, Arizona law requires that once a provider accepts a payment from ACCCHS on behalf of an individual, the provider may not attempt to collect the unpaid balance of the bill directly from that individual. A.R.S. § 36–2903.01(N). However, there is a general lien statute in Arizona which states that organizations with properly licensed ambulances are "entitled to a lien for the customary charges for care and treatment or transportation of an injured person, on all claims of liability or indemnity except health insurance for damages accruing to the person to whom services are rendered." A.R.S. § 33–931. Arizona courts have interpreted these two provisions together to mean that while a provider such as Eagle Air cannot directly bill the ACCCHS patient, they may place a lien on a lawsuit or settlement pursuant to A.R.S. § 33–931 and thus recover some or all of the difference between their customary charge and the amount ACCCHS paid them. *Andrews v. Samaritan Health System,* 201 Ariz. 379, 36 P.3d 57, 61–62 (2001); *Labombard v. Samaritan Health System,* 195 Ariz. 543, 991 P.2d 246, 251 (1998).

### C. Interaction between state and federal law

Plaintiffs argue that the federal ban on balance billing prohibits providers such as Eagle Air from enforcing a lien against insurance proceeds payable to Plaintiffs. Eagle Air counters that the applicable federal provisions only require states to prohibit directly billing the balance to the individual patient; they are not required to prohibit seeking the balance of the bill from any source whatsoever. Furthermore, Eagle Air argues that the federal provisions only dictate what states require of private providers; they do not directly regulate the private providers themselves.

■ A close examination of the laws at issue shows that the Plaintiffs' interpretation is correct. Eagle Air is correct that 42 U.S.C. § 1396a(a)(25)(c) only states that providers may not seek excesses from individuals-it does not address seeking the balance from liable third parties. However, when read in connection with the accompanying regulation and considered in light of practical considerations it is clear that Congress did not intend the narrow and formalistic interpretation posited by Eagle Air. First, the pertinent regulation clearly mandates that states must require providers to accept Medicaid payments as payment in full. See 42 C.F.R. § 447.15. This language prevents providers from billing *any* entity for the difference between their customary charge and the amount paid by Medicaid. Providers are not merely prevented from balance billing patients themselves. Furthermore, this case demonstrates the necessity of the payment in full provision in order to carry out the full spirit of 42 U.S.C. § 1396a(a)(25)(c). Permitting providers to charge the balance of their bill to entities which are liable to the patient ultimately results in the patient recovering less from the liable entity. Congress passed the balance billing prohibition in order to protect eligible patients from having to pay additional sums for services already compensated by Medicaid. The accompanying regulation was passed in order to ensure that this purpose was carried out by preventing providers from intercepting funds on the way to a patient.

While this issue is one of first impression in the Ninth Circuit, this Court's con-

clusion is consistent with other jurisdictions' determinations. *See* Michael K. Beard, *The Impact of Changes in Health Care Provider Reimbursement Systems on the Recovery of Damages for Medical Expenses in Personal Injury Suits,* 21 Am. J. Trial Advoc. 453, 470 n. 98 (1998) ("[A] number of courts have considered whether a physician accepting a Medicaid payment could seek to recover additional sums after the patient had received a settlement of a personal injury lawsuit. Because of the balance billing prohibition, all courts considering the issue have denied such recovery."). Both the First and Seventh Circuits have concluded that federal law precludes providers from receiving any payment beyond the amount paid by Medicaid. *Rybicki v. Hartley,* 792 F.2d 260, 261 (1st Cir.1986); *Evanston Hospital v. Hauck,* 1 F.3d 540, 543 (7th Cir.1993); *see also Mallo v. Pub. Health Trust of Dade Cty.,* 88 F.Supp.2d 1376, 1385–87 (S.D.Fla.2000); *Holle v. Moline Pub. Hosp.,* 598 F.Supp. 1017, 1021 (C.D.Ill. 1984); *Palumbo v. Myers,* 149 Cal.App.3d 1020, 197 Cal.Rptr. 214, 221–22 (1983); *Pub. Health Trust of Dade Cty. v. Dade Cty. Sch. Bd.,* 693 So.2d 562, 566 (Fla.Dist. Ct.App.1996). The Seventh Circuit, in particular, emphasized the fact that providers may choose to not accept funds from Medicaid if they wish to preserve their right to seek their entire customary charge. *Evanston,* 1 F.3d at 542.

Eagle Air also objected to the application of the principle of preemption in this case on the basis that the federal laws at issue do not directly regulate private providers. If the issue was whether Eagle Air had violated a federal law this would be a pertinent point. However the issue is whether Arizona law is preempted by federal law. State law is preempted whenever it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Ting v. AT&T,* 319 F.3d 1126, 1135 (9th Cir.2003). As discussed above, the ultimate purpose and objective of the federal Medicaid provisions regarding balance billing is to protect individuals covered by Medicaid from having to pay any more for medical services than the amount paid by Medicaid. Under the circumstances in this case the Arizona health-care provider lien statute is an obstacle to that purpose being accomplished. Therefore, the lien statute is preempted and cannot be used by Eagle Air to assert a lien against the insurance proceeds for the balance of Plaintiffs' bill.

IT IS ORDERED that Plaintiffs' Motion for Partial Summary Judgment (doc. # 15) is GRANTED. The clerk is directed to enter judgment for plaintiffs.

IT IS FURTHER ORDERED that Defendant's Cross–Motion for Summary Judgment (doc. # 20) is DENIED.