CONCURRING IN PART, DISSENTING IN PART
NELSON, Circuit Judge,
concurring in part and dissenting in part.
I agree with my colleagues on the panel, and with the district court, that the doctrine of collateral estoppel does not bar Ms. Bowling’s trust from challenging Spectrum’s right to retain the funds earmarked for Spectrum in the judicially-approved settlement of the tort action. I respectfully disagree with the majority’s conclusion that the tortfeasor’s promise to compensate Spectrum for its services must be nullified and replaced by a judicially-created obligation to compensate Ms. Bowling’s trust for Spectrum’s services.
If the funds received by Spectrum pursuant to the settlement had come out of Ms. Bowling’s pocket — as would have been the case if Spectrum had enforced its lien against settlement proceeds payable to Mrs. Bowling — it is clear that Spectrum would not have been entitled to keep the money. This is so because the relevant federal statute, 42 U.S.C. § 1396a(a)(25)(C), requires every state medical plan to provide that
“in the case of an individual who is entitled to medical assistance under the State plan with respect to a service for which a third party is liable for payment, the person furnishing the service may not seek to collect from the individual (or any financially responsible relative or representative of the individual) payment of an amount for that service .... ” (Emphasis supplied.)
The required prohibition is commonly termed a ban on “balance billing”- — i.e., a ban on “the 'practice of billing patients for the balance remaining on a medical bill after déducting the amount paid by [the state Medicaid program].” Olszewski v. ScrippsHealth, 107 Cal.Rptr.2d 187, 192 (2001); aff'd in part and rev’d in part, 30 Cal.4th 798, 135 Cal.Rptr.2d 1, 69 P.3d 927 (2003) (emphasis supplied).[1]
The structure of the federal statute suggests that the Olszewski courts’ understanding of the scope of the required ban on balance billing is correct. After explicitly referring to the situation where “a third party is liable for payment,” the statute conspicuously refrains from saying that the entity furnishing the service may not seek to collect from the third party. Instead, the statute simply says that the entity furnishing the service may not seek to collect “from the individual” — i.e., from the patient.
Michigan law appears to be in accord. In compliance with the federal mandate for a balance-billing ban, Michigan has enacted Mich. Comp. Laws § 400.111b(14). This statute obligates a provider of medical services to meet the following requirement:
*322 “Except for copayment authorized by the state department ... a provider shall accept payment from the state as payment in full by the medically indigent individual for services rendered. A provider shall not seek payment from the medically indigent individual, the family, or representative of the individual for ... [authorized services provided and reimbursed under the program.” (Emphasis supplied.)
If the first sentence of § 400.111b(14) stood alone, it could be read in either of two ways. Standing alone, the sentence might mean that the state’s settling of an indigent individual’s medical bill for (as here) something like 30 cents on the dollar would not only extinguish any liability on the part of the individual, it would also extinguish any third-party liability. Or the sentence might mean that acceptance of payment from the state would constitute payment in full as far as the individual is concerned — an interpretation that would leave open the possibility of the service provider’s seeking payment of the balance from an unrelated third party.
It seems to me that the second sentence of § 400.111b(14) illuminates the meaning of the first sentence. What the second sentence says, to repeat, is that “[a] provider shall not seek payment from the medically indigent individual [or his family or representative] for ... services provided and reimbursed under the program.” (Emphasis supplied.) Like its counterpart in the federal statute, this sentence is silent as to collection efforts against an unrelated third party. Reading the two sentences together, as I think one must, I conclude that the first sentence in Michigan’s balance-billing ban was intended to provide that payment by the state must be accepted as payment in full as far as the medically indigent individual is concerned.
But what of the regulations? Do the federal Medicaid regulations broaden the requirement for a ban on balance billing to require the state not only to insure that the entity providing the service “not seek to collect from the individual,” but to require that the provider not seek to collect from anyone else either? Even though the service is one for which, in the words of the statute, “a third party is liable for payment”?
The bare language of the pertinent regulation, 42 C.F.R. § 447.15, unquestionably admits of this possibility. Departing from the structure of the statute, the regulation couches the requirement in these terms:
“A State plan must provide that the Medicaid agency must limit participation in the Medicaid program to providers who accept, as payment in full, the amounts paid by the agency plus any deductible, coinsurance or copayment required by the plan to be paid by the individual.”
It would not be unreasonable for a state Medicaid director to suppose that this language was intended to require that state plans unconditionally prohibit participating service providers from pursuing third-party tortfeasors for payment. See Rehabilitation Services of Virginia v. Kozlowski, 42 F.3d 1444, 1447 (4th Cir.1994).[2] But in guidance provided to state Medicaid directors by the Health Care Financing Administration’s Medicaid Bureau on June 9, *323 1997, the Medicaid Bureau explained that the agency had no such intent. “As long as States assure preservation of certain principles,” the Medicaid Bureau told the states, “Federal law would not preclude the practice of providers pursuing payment in tort situations in excess of Medicaid’s reimbursement_” (Emphasis supplied.) See Olszewski, 107 Cal.Rptr.2d at 194-95, where the text of the Medicaid Bureau’s policy clarification is quoted in extenso.
The Medicaid Bureau’s policy clarification goes on to spell out in detail the conditions under which payment in excess of Medicaid’s reimbursement can be pursued from tortfeasors:
“Specifically, the State must assure that Medicaid is made whole before providers can keep any monies. The State must also prohibit providers from pursuing money that has been awarded to the [patient]. In other words, the provider hen must be against the tortfeasor and not the general assets of the [patient], e.g., the provider would be entitled to reimbursement from a tort judgment or settlement when the settlement specifically designates a set amount of money for medical expenses and then only if this amount is above the amount owed to Medicaid. The provider could be reimbursed only if the money has not been allotted to the beneficiary in a court judgment or settlement. This would mean that if the lien Were not perfected, the tortfeasor would stand to retain the money.” Id. (Emphasis supplied.)
I am aware of no reason to suppose that the Medicaid Bureau’s clarification does not still represent agency policy, entitled to respectful consideration by the courts. Indeed, in the California Supreme Court’s Olszewski decision — a decision handed down more than a year after the parties to Ms. Bowling’s malpractice action reached their settlement agreement and nearly four months after Spectrum’s attorney received the $575,000 allotted to Spectrum in the settlement — the California court relied heavily on the policy clarification in holding that certain sections of California’s Welfare and Institutions Code were in conflict with federal law. In a passage worth quoting in full, the court declared that the policy clarification is “entitled to considerable deference:”
“[T]he June 9, 1997, policy clarification letter sent by the Acting Director of the Medicaid Bureau of the HCFA to all state Medicaid directors confirms that [Welf. & Inst.Code] sections 14124.791 and 14124.74 conflict with federal law. Where a federal regulation is ambiguous, ‘an agency’s interpretation of its own regulation is entitled to deference.’ (Christensen v. Harris County (2000) 529 U.S. 576, 588, 120 S.Ct. 1655, 146 L.Ed.2d 621 (Christensen).) As ‘the Secretary’s attempt to give interpretive guidance to the states in advance of their submission of state Medicaid plans’ (Elizabeth Blackwell Center, supra, 61 F.8d at p. 181, fn. omitted), this letter is a policy directive entitled to considerable deference (see id. at pp. 181-182 [according great deference to a policy directive issued by the Director of the Medicaid Bureau of the HCFA]).” 135 Cal.Rptr.2d at 19-20, 69 P.3d 927 (footnote omitted).[3]
*324 Under the factual circumstances presented in the case at bar, it does not appear to me that federal policy, as reflected in the pertinent statutory and regulatory law, precludes Spectrum from being fully compensated by the third party whose alleged malpractice gave rise to Ms. Bowling’s need for the care Spectrum provided. Among the relevant circumstances are these:
— it is undisputed that Michigan’s Medicaid program was made whole by the tortfeasor’s payment of $104,719.68 to the State of Michigan in satisfaction of Michigan’s Medicaid healthcare lien;
— Spectrum received nothing out of the funds awarded to Ms. Bowling; and
— both the settlement and the judgment approving it “specifically designate[d] a set amount of money for medical expenses,” to use the Medicaid Bureau’s language, and “the money has not been allocated to the beneficiary in a court judgment or settlement.”
I believe it is evident, in short, that Spectrum has not recovered anything from the patient. In this respect there is a crucial difference between the present case and the many cases in which courts (including ours) have either said generally that healthcare providers may not require patients to pay anything beyond what Medicaid has paid or have held specifically that damages recovered by a Medicaid patient in a tort suit may not be reached by a service provider that accepted payment from Medicaid. See, e.g., Barney v. Holzer Clinic, Ltd,., 110 F.3d 1207, 1210 (6th Cir.1997); Evanston Hospital v. Hauck, 1 F.3d 540, 542 (7th Cir.1993), cert. denied, 510 U.S. 1091, 114 S.Ct. 921, 127 L.Ed.2d 215 (1994); Mallo v. Public Health Trust, 88 F.Supp.2d 1376, 1387 (S.D.Fla.2000); Lizer v. Eagle Air Med. Corp., 308 F.Supp.2d 1006, 1009-10 (D.Ariz.2004).[4]
*325 It is true that if the tort case had been settled on terms that called for a payment of money only to Ms. Bowling or her representatives, a lien asserted by Spectrum on the proceeds of such a settlement would have been a lien on Ms. Bowling’s property. As such, the lien would have been unenforceable. But because the settlement — and the court order approving it— made a “line item” allocation to Spectrum for the value of the services provided, it was not Ms. Bowling’s money that Spectrum received when the tortfeasor honored his contract (a contract of which I presume Spectrum was a third-party beneficiary) by paying Spectrum’s bill.
We have no reason to suppose that the allocation of money to Spectrum reduced Ms. Bowling’s recovery pro tanto, and we have good reason to suppose it did not. Under the law of New York (the state where the injury occurred and where the alleged tortfeasor was sued), it is clear that Ms. Bowling never had a claim against the tortfeasor for the fair value of Spectrum’s services. New York does not follow the traditional collateral-source rule — and, applying New York statutory law, New York’s highest court has held that a tort claimant may not recover as special damages the value of medical and nursing care furnished gratuitously. Coyne v. Campbell, 11 N.Y.2d 372, 230 N.Y.S.2d 1, 183 N.E.2d 891 (1962). Thus it was held in a recent New York intermediate appellate court case that where a hospital wrote off a $138,000 balance that remained on a $369,000 hospital bill after the hospital received partial payment from Medicaid and a no-fault insurer, the plaintiff in a wrongful death action could not recover the write-off as an element of her damages. Kastick v. U-Haul Co. of Western Michigan, 292 A.D.2d 797, 740 N.Y.S.2d 167 (2002).
The ramifications for the present case are obvious. The New York trial attorneys who negotiated the settlement of Ms. Bowling’s tort suit may not have been familiar with the intricacies — and uncertainties — of federal Medicaid law, but they must have been well aware of New York’s version of the collateral source rule. New York personal injury lawyers and New York defense counsel deal with this rule all the time. I believe that these New York lawyers knew perfectly well, when they negotiated their multi-million dollar settlement, that Spectrum’s bill for services could not be an element of Ms. Bowling’s damages under New York law. And they would probably be puzzled, as I am, about the source of this court’s authority to rewrite their settlement agreement so that instead of compensating. Spectrum for the services it provided, the defendant in the malpractice action will be paying the plaintiff several hundred thousand dollars to which New York law gives her absolutely no claim.
It seems clear to me, under the facts presented here, that Spectrum’s collection of its bill from the tortfeasor cannot properly be viewed as a collection from the patient herself. My colleagues on the panel having seen the matter differently, I respectfully dissent on this issue.

. This definition of balance billing was endorsed by the California Supreme Court in footnote 2 of its opinion, 135 Cal.Rptr.2d 1, 69 P.3d at 931.

. In presenting an overview of the Medicare/Medicaid program, the Kozlowski court observed that ''[s]ervice providers who participate in the Medicaid program are required to accept payment of the state-denoted Medicaid fee as payment in full for their services, i.e., they are required to take assignment, and may not attempt to recover any additional amounts elsewhere.” Id. at 1447. This statement was pure dictum; it had nothing whatever to do with the issue the court decided.

. Prior to the Medicaid Bureau's issuance of its June 9, 1997, policy clarification, Florida's Medicaid agency adopted a regulation providing that when the agency has been made whole in respect of a payment of medical , assistance, “any excess third-party benefits collected by a provider are permitted to be applied to provider charges that exceed Medicaid payment .... ” Regulation 59 G-7.055(6), Fla. Admin. Code, as quoted in Pub. Health Trust of Dade County, Fla. v. Dade Co. School Brd., 693 So.2d 562, 566 (Fla.Dist. *324 Ct.App.1997). “Clearly,” the Florida court concluded, "this state administrative regulation is in direct conflict with federal Medicaid laws .Id. Perhaps the perceived conflict with federal Medicaid laws would have been less clear to the court if it could have known of the federal Medicaid Bureau’s interpretation of the federal Medicaid laws.
Or perhaps not. The majority opinion in the case at bar makes a persuasive argument that the 1997 policy clarification letter, which was not the product of a notice-and-comment proceeding, is not, strictly speaking, entitled to "deference.” What the letter is entitled to, I believe, is respectful consideration. And the message the letter conveys to me, at least, is that the agency which adopted the regulation codified at 42 C.F.R. § 447.15 did not intend the regulation to be taken as a blanket prohibition against healthcare providers seeking to be made whole by third-party tortfeasors in situations where the interests of the Medicaid beneficiary would not thereby be prejudiced. If the Supreme Court of the United States, in interpreting the work product of a coordinate branch of government, can engage in the type of humane statutory construction of which Church of the Holy Trinity v. United States, 143 U.S. 457, 12 S.Ct. 511, 36 L.Ed. 226 (1892), is a classic example, I am not sure that the Court would wish to bar administrative agencies from engaging in precisely the same sort of interpretation of their own regulations. Who is in a better position than the agency itself to know what the agency was or was not thinking of when it adopted a regulation the strict application of which, in occasional situations, would be patently unjust?

. In Palumbo v. Myers, 149 Cal.App.3d 1020, 197 Cal.Rptr. 214 (1983), a divided intermediate appellate court in California held that even where a Medicaid patient’s tort settlement allocated funds for the full payment of the treating physician’s fee, the physician could not keep the money when paid by the tortfeasor. The Palumbo decision turned, however, on a California statute that barred providers of health care services under the state's Medi-Cal program from recovering the cost of covered services from the patient "or any other person,” subject to exceptions that were held not to include third-party tortfeasors. See id. at 1023, 197 Cal.Rptr. 214. No such state statute has been called to our attention here — and as far as federal law is concerned, the Supreme Court of California has now recognized that "federal statutes and *325 regulations do not bar a provider from recovering from liable third parties .... ” Olszewski, 135 Cal.Rptr.2d at 19, 69 P.3d 927.