## CITY OF PHILADELPHIA & COMP SERVICES, Petitioners,

v.

## MEDICAL FEE REVIEW HEARING OFFICE (RJS INDUSTRIES), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 30, 1999.

Decided Sept. 1, 1999.

Mary T. Uhlig, Philadelphia, for petitioners.

C.A. Teklinski, San Diego, CA, for respondent.

Before PELLEGRINI, J., FRIEDMAN, J., and RODGERS, Senior Judge.

PELLEGRINI, Judge.

The City of Philadelphia (Insurer) appeals from the decision of the hearing officer of the Department of Labor and Industry, Bureau of Workers' Compensation

(Bureau), finding that it must reimburse RJS Industries, Inc. (Provider) for the amount of rental fees for medical equipment because it failed to provide Provider with the requisite notice and opportunity to respond to a disputed billing code.

From June 1996 through June 1997, Provider rented a neuromuscular stimulator known as the H–Wave to four of Employer's workers' compensation claimants for muscular relaxation, prevention of disuse atrophy and maintenance of blood flow.[1] Provider then submitted the bills for the rental fees to Insurer, listing the billing code for the H–Wave as "miscellaneous" Medicare billing code E1399 with a charge of $449.30 per month. Upon receiving the bills, Insurer wrote to Provider explaining it would not pay the rental fees because the use of the H–Wave was an unproven therapy for which claims would be summarily denied.

To challenge Insurer's denial of payment, Provider filed applications[2] with the Bureau for fee reviews pursuant to Section 306(f.1)(5)[3] of the Workers' Compensation Act (Act).[4] The Bureau issued an administrative decision granting reimbursement to Provider. Insurer then filed a request for a *de novo* hearing with the Bureau review hearing office where, for the first time, it argued that a procedural defect in Provider's application for reimbursement was the reason for the denial and not because the H–Wave treatment was unproven. Insurer contended it was not required to reimburse the rental costs of the H–Wave device because, by using a "miscellaneous" Medicare billing code where Insurer believed a different and more specific[5] Medicare billing code should have been used, Provider was, in effect, giving no code at all. Because Provider had submitted materials which Insurer believed contained no billing code, Insurer argued that it was not required to contact Provider to change the billing code, but rather could treat the entire file as incomplete and deny the reimbursement.

At the hearing, Sandra Belton Macchioni (Macchioni), Insurer's Manager for Repric-

1. The four workers' compensation claimants were Sergio Rodriguez, Neil Carr, Dennis Foglia and Fred Hall. The fee dispute concerning their bills was consolidated on appeal to the Bureau.

2. Provider filed applications for fee review for each of the four claimants. The application numbers are as follows: Sergio Rodreguez (Nos. 44148 & 44256), Neil Carr (No. 44045), Dennis Foglia (Nos.43764, 44044, 44258, 462950), and Fred Hall (No. 44456).

3. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 531(5). That section provides in pertinent part:

   The employer or insurer shall make payment and providers shall submit bills and records in accordance with the provisions of this section ... A provider who has submitted the reports and bills required by this section and who disputes the amount or timeliness of the payment from the employer or insurer shall file an application for fee review with the [Bureau].

4. The fee review process is initiated upon provider's filing of an application and requisite supporting documents with the Bureau within 30 days following notification of a dis-

puted treatment or 90 days following the original billing date of the treatment, whichever is later. 34 Pa.Code § 127.252. Once the provider has filed all of the documentation required, the Bureau investigates the matter and then renders an administrative decision within 30 days of receipt of the required documentation. 34 Pa.Code § 127.255. A provider or insurer may contest an adverse administrative decision by filing an appeal with the Bureau. 34 Pa.Code. § 127.257. After a *de novo* hearing, the hearing officer issues a written decision and order which can then be appealed to this court. 34 Pa.Code § 127.260.

5. Where a more specific Medicare billing code is available, under Section 306(3)(i) of the Act, the payment amount is dictated by a fee schedule for that type of treatment and, as such, the amount of reimbursement is limited. 77 P.S. § 531(3)(i). In contrast, if a Medicare billing code does not exist for a particular treatment, the miscellaneous designation is used and the amount of the payment made to the health care provider will be either 80% of the "usual or customary" charge for that treatment or the actual charge, whichever is lower, thus providing more latitude in amount of reimbursement allowable to provider. *Id.*

ing Services, testified in order to establish that Provider had improperly coded its billing.[6] She stated that based on her research of the H–Wave, the miscellaneous billing code of E1399 was incorrect because the H–Wave was essentially a powered muscle stimulator which should have been coded under the specific Medicare code of E0745 for durable medical equipment.[7] She further testified that a change to the more specific billing code reduced the amount of reimbursement allowable for the H–Wave device rental charges from the $449.30 per month requested by Provider to only $96.70 per month. As to the notification given to Provider, Macchioni stated that a denial letter was sent to Provider based upon the unproven nature of the treatment, but no mention was made of the disputed billing code.

On behalf of Provider, Mary Fleming (Fleming), the operator of the medical billing company that supplied the billing services for Provider, testified that the miscellaneous E1399 code was the appropriate code for the H–Wave because she understood the more specific Medicare billing code of E0745 was to apply only when the claimant was using the equipment for a disuse atrophy, which was not the reason for the use by the claimants.[8] She further testified that the usual and customary rental fee for the H–Wave device was $449.30 per month which was reimbursed at 80% of the normal and customary charge or 100% of the charge depending on who was paying for the device. Fleming also stated that she did not receive any

notification from Insurer to indicate a different code should be used.

Provider also submitted into evidence letters sent by Insurer to Provider which included the reasons for the denial of reimbursement as follows:

- "All Claimants for H–Wave treatments sent to CSI will be denied by medical director;"
- "Unproven therapy; CSI's medical director – denies all claimants for H–Wave;"
- "All bills for H–Wave are denied now and into the future;" and
- "H–Wave stimulator are not approved."

Finding that Insurer had failed to give Provider the requisite notice and an opportunity to respond as required by the Bureau's regulations when the Insurer determined that a different code should be used for billing the H–Wave rentals, the hearing officer granted reimbursement to the Provider for the rental charges of the H–Wave. This appeal followed.[9]

On appeal, Insurer again argues that it can summarily deny any application for medical fee reimbursement as incomplete if the application contains a billing code that Insurer believes should be different than the one used, and when that occurs, it is not required to contact Provider or provide a reason for denials in such cases. Insurer's argument is disingenuous. First, it did contact Provider and the only reason it gave for denying payment was

---

6. Under Section 127.259(f) of the Regulations, the insurer has the burden to prove, by a preponderance of the evidence, that it properly reimbursed the provider. 34 Pa.Code 127.259(f).

7. Macchioni relied on the St. Anthony's HCPC Level 2 book, Section E, concerning durable medical equipment to arrive at the more specific Medicare billing code and the maximum rental fee allowable.

8. Provider also offered the testimony of William J. Heaney, the manufacturer of the H–Wave device, who testified that the purpose of the device was a powered muscle stimulator

for disuse atrophy which was not to be billed under the specific Medicare billing code for durable medical equipment.

9. Our scope of review of a hearing officer's order involving a medical fee review is limited to determining whether constitutional rights were violated, whether an error of law was committed or whether the necessary findings of fact were supported by substantial evidence. *Royal Insurance v. Department of Labor and Industry, Bureau of Workers' Compensation (Spine Center)*, 728 A.2d 401 (Pa. Cmwlth.1999).

that the H–Wave device was an unproven therapy. Second, and more importantly, Insurer's assertion that it is not required to contact Provider if a wrong billing code is submitted is contrary to the plain language of Section 127.207 of the Bureau's Medical Costs Containment Regulations. Section 127.207 requires that when an insurer believes a different billing code should be used than the one provided, it must notify the provider in writing of the proposed changes and reasons in support of the changes, and the insurer must then give the provider an opportunity to discuss the proposed changes and support the original coding decisions, none of which was done in this case.[10]

Not only does the regulation specifically provide what procedure should be followed, but it also provides the remedy when there is not "strict compliance" with its notification requirements, i.e., any challenge based on a billing code will "result in disputes in favor of the provider." 34 Pa.Code § 127.254. Because Insurer notified Provider that it was not paying because of the unproven nature of the treatment and only shifted to the "coding" issue after the review was underway, it failed to strictly comply with the notice requirements. As a result, the hearing officer did

not err in resolving the fee review dispute in favor of Provider.[11]

Accordingly, Bureau's Order is affirmed.

### ORDER

AND NOW, this 1st day of September, 1999, the order of the Bureau of Workers' Compensation, dated March 1, 1999 is affirmed.

---

10. Specifically, Section 127.207 provides:
    (a) Changes to a provider's codes by an insurer may be made if the following conditions are met—
       (1) The provider has been notified in writing of the proposed changes and the reasons in support of the changes.
       (2) The provider had been given an opportunity to discuss the proposed changes and support the original coding decisions.
       (3) The insurer has sufficient information to make the changes.
       (4) The changes are consistent with Medicare guidelines, the act and this subchapter.
    (b) For purposes of subsection (a)(1), the provider shall be given 10 days to respond to the notice of the proposed changes, and the insurer must have written evidence of the date notice was sent to the provider.
    (c) Whenever changes to a provider's billing codes are made, the insurer shall state the reasons why the provider's original codes were changed in the explanation of

benefits required by § 127.209 (relating to explanation of benefits paid).
34 Pa.Code § 127.207.

11. Having resolved the fee dispute in favor of Provider, in its order, the hearing officer ordered Insurer to pay Provider's billing "charges" for the H–Wave device while stating in the body of the decision that Provider is entitled to the payment of rental of the H–Wave device at the "usual and customary" amount as testified to by its witness, Fleming. Insurer contends that the hearing officer erred because he applied the "usual and customary" standard associated with a provider's use of the miscellaneous code to determine the amount of reimbursement. Because the regulations specifically state that failure to strictly follow the notification procedures requires a judgement in favor of the provider, the rental fees will be assessed according to the billing charges as ordered by the hearing officer.