**Joseph NICKEL, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (AGWAY AGRONOMY), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 15, 2008.
Decided Oct. 22, 2008.

---

Thomas J. Floyd, Jr., Lancaster, for petitioner.

Paul J. Dellasega, Harrisburg, for respondent.

BEFORE: McGINLEY, Judge, COHN JUBELIRER, Judge, and BUTLER, Judge.

OPINION BY Judge McGINLEY.

This is an appeal from the order of the Workers' Compensation Appeal Board (Board) that reversed the decision of the Workers' Compensation Judge (WCJ) to grant Joseph Nickel's (Claimant) Penalty Petition.

On November 9, 2001, Claimant injured his lower back during the course and scope of his employment for Agway Agronomy (Employer). Claimant filed a claim petition on October 17, 2002. Employer denied liability.

During the pendency of the litigation, Claimant underwent two back surgeries and other treatments. Claimant's medical bills were sent to Employers' workers' compensation insurance carrier for payment. The insurer, however, refused to pay the bills pending the outcome of litigation.

Because Claimant had no other insurance, the medical provider billed Claimant's secondary insurer, the Department of Public Welfare (DPW). DPW's payment schedule was less than the workers' compensation schedule for these services. The DPW submitted the amount of $12,278.38, which the provider accepted.

On December 8, 2004, the parties entered into a Compromise and Release Agreement (C & R Agreement). Employer agreed to pay:

> [A]ll additional medical expenses in accordance with the provisions of Section 306 of the Act for bills which are reasonable and necessary and causally related to the injury provided they be submitted in the form required by Act 44. Unless modified by further Compromise and Release Agreement Employer's obligation to pay medical expenses is ongoing.

Compromise and Release Agreement, December 8, 2004, ¶ 10 at 2; Reproduced Record (R.R.) at 6a.

On August 25, 2006, the DPW asserted a lien for payment of Claimant's medical bills in the amount of $12,278.38.

Employer paid the DPW lien, and 20% of the lien to Claimant's attorney pursuant to the Social Security Act, 42 U.S.C.

§ 1396A(a)(25), § 1396k, 42 C.F.R. § 433.135 *et seq;* Section 3 of the Workers' Compensation Act (Act)[1], 77 P.S. § 998.

On October 4, 2006, Claimant filed a Penalty Petition pursuant to Section 435 of the Act, 77 P.S. § 991(d), and alleged that Employer "failed and refused to pay or reimburse Claimant for reasonable and necessary medical expenses related to the work injury despite repeated demands by claimant." Penalty Petition, October 4, 2006, at 2. Specifically, Claimant asserted that Employer violated the Act by satisfying only the DPW lien rather than pay the bills at the "Act 44 re-pricing amount" in accordance with the higher rates set forth in Section 306 of the Act.[2]

Hearings were held before the WCJ. Claimant presented the testimony of Martin Lowther, the administrator for Lancaster Neuroscience & Spine Associates (Lancaster Neuroscience), one of Claimant's medical providers. Lowther testified that Claimant treated from October 2002 to May 2005. The neurosurgeons from the practice performed a laminectomy in 2002 and a low back fusion in July 2003. The total bill for this period, before Act 44 re-pricing, totaled $31,854.00. Deposition of Martin Lowther, (Lowther Deposition) February 6, 2007, at 6, 15; R.R. at 72a, 81a.

Lowther confirmed that Claimant did not owe Lancaster Neuroscience any money and that it was not the intention of the practice to "balance bill" Claimant. Lowther Deposition at 22; R.R. at 88a.

He explained that it was the practice of Lancaster Neuroscience to accept DPW's payment as full satisfaction. However, he believed that Employer's workers' compensation carrier was responsible for paying the difference between what the DPW paid and what the workers' compensation carrier would have otherwise been required to pay according to the higher Act 44 re-pricing schedule. Lowther Deposition at 14, 19, 24; R.R. at 80a, 85a, 90a.[3]

On July 3, 2007, the WCJ granted the Penalty Petition, found that Employer violated the terms of the Act and the C & R Agreement and assessed a penalty of $8,000 against Employer:

> This Judge finds that the Employer violated the terms of the Workers' Compensation Act and paragraph # 10 of the Compromise & Release Agreement by failing to pay the healthcare providers in accordance with Section 306 of the Act. Under the terms of the Compromise & Release Agreement, the Employer expressly agreed in paragraph # 10 to pay all additional medical expenses in accordance with the provisions of Section 306 of the Act. The Workers' Compensation Act, Section 306(f.1)(5) states that the Employer shall make payment in accordance with the provisions of that section, which includes a specific fee schedule. *Although the Employer satisfied the DPW lien, it did not pay for medical expenses in accordance with Section 306 of the Act. This Judge acknowledges that there is no evidence that Claimant faces*

---

1. Act of June 2, 1915, P.L. 736, *as amended.* Pursuant to Section 435 of the Act, 77 P.S. § 991(d), a WCJ is authorized to impose penalties for violations of the Act. *McKay v. Workmen's Compensation Appeal Board (Bethenergy Mines, Inc.),* 654 A.2d 262 (Pa.Cmwlth.1995); *Ortiz v. Workmen's Compensation Appeal Board (Fair Tex Mills, Inc.),* 102 Pa.Cmwlth. 493, 518 A.2d 1305 (1986).

2. 77 P.S. § 531. The Act of July 2, 1993, P.L. 190, commonly known as "Act 44," amended the Act. Act 44 limits the amount of money that a health care provider may lawfully charge or accept as payment for health services to 113% of the prevailing charge payable by Medicare.

3. Claimant did not provide testimony from any other medical provider.

*any remaining personal liability for the work-related medical expense. However, this is only because the Employer unfairly benefited by their (sic) own initial denial of the claim which caused the healthcare providers to accept payment at the lower DPW schedule. The Employer has achieved a significant benefit by their (sic) own initial denial at the expense of the healthcare providers who are entitled to be reimbursed at the higher workers' compensation fee schedule.*

* * *

In short, this Judge finds that the Employer violated the terms of the Act and the Compromise & Release Agreement by failing to pay in accordance with the Act 44 fee schedule.

WCJ Decision, July 23, 2007, at 4 (Emphasis added).

Both parties appealed. The Board reversed and held that the WCJ lacked jurisdiction to resolve "a fee dispute." *Enterprise Rent–A–Car v. Workers' Compensation Appeal Board (Clabaugh)*, 934 A.2d 124 (Pa.Cmwlth.2007). Citing to the Department of Labor and Industry's Regulations, 34 Pa.Code § 127.256, § 127.257, the Board reasoned that jurisdiction over fee disputes lies with the Bureau of Workers' Compensation and its hearing examiners, not WCJ's. "Fee review requests are assigned to a hearing officer who will conduct a *de novo* proceeding." Board Opinion, April 4, 2008, at 4. The Board went on to conclude that the WCJ committed an error of law when he granted the Penalty Petition because he lacked jurisdiction.

The Board held that Lancaster Neuroscience was required to file a "fee review application with the [Fee Review Section of the Department]" if it disputed the amount of Employer's payment pursuant to Section 306(f.1)(5) of the Act, 77 P.S. § 531(5) [4]:

(5) *A provider who has submitted* the reports and *bills* required by this section *and who disputes the amount* or timeliness *of the payment from the employer or insurer shall file an application for fee review with the department no more than* thirty (30) days following notification of a disputed treatment or *ninety (90) days following the original billing date of treatment.*

The Board further held that because Lancaster Neuroscience failed to file a fee review application within 90 days of the original billing date and instead accepted the DPW's payment, it "waived" its right to challenge the amount paid.

On appeal [5], Claimant asserts that: (1) the WCJ had jurisdiction to penalize the Employer for violations of the Act; (2) the Employer violated the Act and the C & R Agreement when it failed to pay Claimant's medical expenses in accordance with Section 306 of the Act; (3) the WCJ's penalty was inadequate, and (4) the WCJ should have ordered Employer to pay Claimant's medical expenses at the reimbursement rates set forth in Section 306.

### 1. Whether the WCJ Lacked Jurisdiction to Rule on Claimant's Penalty Petition?

First, Claimant asserts that the Board erred when it held that Lancaster Neuros-

---

4. The Regulations, 34 Pa.Code, § 127.251 provide that "[a] provider who has submitted the required bills and reports to an insurer and who disputes the amount or timeliness of the payment made by an insurer, shall have standing to seek review of the fee dispute by the Bureau."

5. On review, this Court is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether errors of law were made, or whether constitutional rights were violated. *Morris Painting, Inc. v. Workers' Compensation Appeal Board (Piotrowski)*, 814 A.2d 879 (Pa.Cmwlth.2003).

cience's only recourse was to file a fee review application. He contends that Employer denied liability from the outset and continued to dispute liability in the C & R Agreement which stated: "Liability in this case is disputed." Compromise and Release Agreement, December 8, 2004, ¶ 15. Claimant argues because liability was never established or accepted, the fee review provisions in Section 306(f.1)(5) of the Act, 77 P.S. § 531(5) and sections 127.251 through 127.302 of the regulations, were unavailable to his medical providers.

■ Initially, Claimant is correct in that the fee review process presupposes that liability has been established, either by voluntary acceptance by the employer or a determination by a WCJ. Neither the Act nor the medical cost containment regulations provide any authority for a fee review officer to decide the issue of liability in a fee review proceeding. The Department's regulations, at 34 Pa.Code § 127.255(1), state that an application for fee review filed by a provider is premature and will be returned if "[t]he insurer denies liability for the alleged work injury." The issue for the fee review officer is the "amount and timelines of the payment made by an insurer." 34 Pa.Code § 127.251.

■ The reason that the Department will not entertain fee review applications where the insurer denies liability is because there is no authority "for a [fee review] officer to decide the issue of liability in a fee review proceeding." *Catholic Health Initiatives v. Heath Family Chiropractic*, 720 A.2d 509, 511 (Pa.Cmwlth. 1998). This Court has held that "the fee review sections of the Act were not intended, and will not now be held to permit, the determination of liability as to a particular injury treatment under the Act." *Allen v.* *Proto Home Improvements*, 847 A.2d 225, 228 (Pa.Cmwlth.2004). Before the fee review officer may determine the "amount and timeliness of the payment made by an insurer," there must be a preliminary determination or agreement that the injury and the bills in dispute are work-related.

■ In the case of a C & R agreement where the employer denies liability, but nevertheless agrees to remain responsible for Claimant's reasonable and necessary medical expenses, the Department may proceed so long as the parties agree that the bills are related to the work injury. In other words, in this scenario, the only issue is the amount of the bill; the fee review officer is not called upon to make credibility determinations or legal judgments with regard to an insurer's liability for a particular injury or treatment. In that circumstance, the employer agrees, in compromise, to pay the medical bills irrespective of liability, i.e., Employer's responsibility for the medical bills is assumed.

■ Contrary to Claimant's position, even if Lancaster Neuroscience had filed a fee application to dispute the amount of Employer's payment, the application would not have been "premature" on the ground that liability had not yet been established or accepted. Because the C & R Agreement established Employer's *responsibility* for the medical bills and because the parties stipulated that they related to the alleged injury [6], Claimant is incorrect when he asserts that the Employer's "denial of liability" in the C & R Agreement precluded Lancaster Neuroscience from filing a fee review application.

However, this does not end the dispute because this Court also does not agree with the Board that a fee review applica-

---

6. Hearing Transcript, April 10, 2007 at 9; R.R. at 59a.

tion was appropriate in these circumstances.

■ Here, the provider, Lancaster Neuroscience, did not challenge the "amount or timeliness of the insurer's payment" as contemplated by Section 306(f.1)(5) of the Act.[7] Rather, the issue was whether Lancaster Neuroscience was entitled to collect from Employer the difference between Lancaster Neuroscience's charges, as repriced, and the DPW lien. Claimant filed a Penalty Petition and alleged that Employer's refusal to reimburse Lancaster Neuroscience in accordance with the higher workers' compensation payment schedule constituted a violation of the Act and the parties' C & R Agreement.[8]

7. For a classic example of the type of fee dispute contemplated by Section 306(f.1)(5) of the Act, 77 P.S. § 531(5) *see Philadelphia v. Medical Fee Review Hearing Office*, 737 A.2d 356 (Pa.Cmwlth.1999), which involved disputed billing codes, the unproven nature of a certain medical treatment, and the usual and customary rental fees for medical devices.

8. At the hearing before the WCJ, Claimant's attorney returned two checks to Employer's counsel: (1) one made payable to the DPW in the amount of its lien; and (2) one made payable to Claimant's attorney which represented his attorney fee based on 20% of the DPW's lien. According to Claimant's attorney, Employer was required, upon Lancaster Neuroscience's demand, to reimburse Claimant in the amount of the higher Act 44 repriced amounts rather than simply satisfy the DPW lien. Claimant's attorney indicated that he would deliver that amount to Lancaster Neuroscience, less his 20% attorney fee. Lancaster Neuroscience would, in turn reimburse DPW, i.e., return to DPW the monies it had received from DPW for Claimant's medical bills. *See* Hearing Transcript, November 28, 2006 (N.T., 11/28/06), at 9. (This particular transcript is not part of the Reproduced Record).

9. Although not raised by either party, this Court is constrained to remark on Claimant's standing to file a penalty petition in light of the fact that it is Employer that Lancaster

The fee review officer did not have jurisdiction to decide this legal issue; it was properly raised before the WCJ.[9]

2. *Was the Provider Entitled to Collect from Employer the Difference between the Providers' Charge (As Repriced) and the DPW lien?*

Next, Claimant asserts that the Employer violated the Act and C & R Agreement because it did not reimburse Lancaster Neuroscience in accordance with Act 44's Section 306(f.1)(5)'s fee schedule. Claimant maintains that Lancaster Neuroscience was entitled to "balance bill," i.e., to recover from Employer the difference between its charges as repriced under Act 44 and the DPW's lien.[10] This Court must disagree.

Neuroscience contends owes the additional monies, not Claimant. Claimant's attorney acknowledged "Claimant isn't getting anything out of this" and that he was "representing the interests" of the medical providers. N.T. 11/28/06 at 8, 15.

In *Hough v. Workers' Compensation Appeal Board (AC&T Companies)*, 928 A.2d 1173 (Pa. Cmwlth.2007), this Court held that a claimant who was not aggrieved nevertheless had standing to file a penalty petition. In *Hough*, the employer failed to timely reimburse provider for claimant's prescriptions. As in this case, the provider never discontinued the claimant's prescriptions, nor did it seek payment directly from the claimant. And, similar to the facts here, the provider contacted the claimant's counsel regarding "working together" to get the prescriptions paid. *Id.* 928 A.2d at 1180. Claimant filed a penalty petition and alleged that employer failed to timely reimburse his provider. The employer challenged claimant's standing since she was not aggrieved. The WCJ found that the claimant did have standing. This Court affirmed and explained "the Act does not require a claimant suffer economic harm before a penalty can be imposed. Rather, penalties may be imposed to secure compliance with the Act." *Id.* (citations omitted).

10. Balance-billing is the practice whereby a provider bills the patient directly for the balance of the reasonable costs and charges if

■ It is well settled that a medical provider is prohibited from attempting to collect *from the claimant/employee* the difference between the provider's charge and the amount paid by the employer or workers' compensation carrier. Specifically, Section 306(f.1)(7) states:

> (7) A provider shall not hold an employe liable for costs related to care or service rendered in connection with a compensable injury under this act. *A provider shall not bill or otherwise attempt to recover from the employe the difference between the providers charge and the amount paid by the employer or the insurer.* (Emphasis added).

Similarly, 34 Pa.Code § 127.211(a) prohibits:

> **127.211 Balance billing prohibited.**
>
> (a) A provider may not hold an employe liable for costs related to care or services rendered in connection with a compensable injury under the act. *A provider may not bill for, or otherwise attempt to recover from the employe, the difference between the provider's charge and the amount paid by an insurer.* (Emphasis added).

*See also,* Pennsylvania's Health Care Practitioners Medicare Fee Control Act, 35 P.S. §§ 449.31–449.36.

Without question, Lancaster Neuroscience did not, and could not seek any additional payment from Claimant. The interesting question posed by Claimant is whether Lancaster Neuroscience may collect *from the Employer or its workers' compensation insurer* the difference between the provider's charge (as re-priced under Act 44) and the amount of DPW's lien.

the Medicare or Medicaid program does not pay the full amount of the reasonable costs

In *Westinghouse Electric Corp. v. Workers' Compensation Appeal Board (Weaver),* 823 A.2d 209 (Pa.Cmwlth.2003), this Court held that when medical expenses incurred for treatment of any injury are initially paid by a health insurer and the injury is subsequently determined to be compensable, the employer is obligated to pay the provider any difference between the re-priced amount to which it is entitled under the Act and the amount it actually received.

In *Westinghouse,* Mary Ann Weaver (Weaver) had sustained a work related injury. Her bills were initially paid by her private health insurer, Highmark Blue Cross/Blue Shield (Highmark). The amount paid by Highmark to each provider was less than the repriced amount under the Act.

After a hearing on Weaver's claim petition, the WCJ found, based on the stipulations of the parties, that Weaver sustained a work related injury and incurred certain medical bills for reasonable and necessary treatment. The WCJ ordered that the medical expenses were to be repriced in accordance with the medical costs containment regulations and directed Westinghouse to reimburse Highmark 80% of the repriced expenses and to pay Weaver's providers the difference due between the repriced amount and the amount received by the providers from Highmark.

Westinghouse appealed and argued, *inter alia,* that the WCJ erred in assessing penalties and interest based upon the difference due between the repriced amount and Highmark's payment. Westinghouse argued that its obligations under the Act were satisfied by its reimbursement to Highmark for its payment to the provid-

and charges.

ers. This Court disagreed with Westinghouse and held:

> Employer's [Westinghouse] obligation under the Act is to pay, in a timely manner, Claimant's [Weaver] medical bills and expenses and this includes any difference between the repriced amount and any lesser amount paid by an insurer if such payment results in the provider being underpaid. Accordingly, Employer [Westinghouse] is responsible for the difference owed to the providers ...

*Westinghouse*, 823 A.2d at 216.

Unlike in *Westinghouse*, where the employer was ordered to reimburse the providers the difference between the repriced amount and the payment by Weaver's private health insurer, here, the providers accepted *the DPW's* payment for Claimant's medical expenses. Because a DPW lien is involved in this controversy, an entirely different set of rules and considerations control. Accordingly, *Westinghouse*, while factually similar, is not dispositive.

■ To begin, the Medicaid Program, established by Title XIX of the Social Security Act (SSA), 42 U.S.C. §§ 1396–1396v, is a cooperative federal-state program under which the federal government furnishes funding to states for the purpose of providing medical assistance to eligible low-income persons. Pennsylvania participates in the Medicaid Program through its plan, the Medical Assistance (MA) program. Under this program, the state and federal governments finance MA to indigent, elderly and disabled individuals. Pennsylvania's MA Program is administered by the DPW. To qualify for federal funding, DPW must administer its MA Program in conformity with federal requirements. Section 1902 of the SSA, 42 U.S.C. § 1396a.

First, federal law requires that Pennsylvania prohibit its Medicaid agency (here the DPW) from seeking to "collect from the individual (or any financially responsible relative or representative of that individual) payment of an amount for that service (i) if the total of the amount of the liabilities of third parties for that service is at least equal to the amount payable for that service under the plan ...". 42 U.S.C. § 1396a(a)(25)(c).

Likewise, the federal regulations accompanying the statute explicitly limit participation in the Medicaid program to "providers who accept, as *payment in full*, the amounts paid by the agency." 42 C.F.R. § 447.15 (Emphasis added).

■ The clear import of these words is that the Medicaid payment is the total amount owed to the provider for the services rendered, and thus the provider may not attempt to recover any additional amounts elsewhere. By entering into a provider agreement with the state, a medical provider agrees to accept as full compensation for medical services those amounts set forth in the Medicaid agreement. By opting for reimbursement from Medicaid, a health care provider buys certainty; a guarantee of partial payment in lieu of possibly full payment or possibly no payment at all. *Evanston Hospital v. Hauck*, 1 F.3d 540 (7th Cir.1993). Clearly, a provider may choose not to accept funds from Medicaid if it wishes to preserve its right to seek its entire customary charge. *Evanston*, 1 F.3d at 542.

As the Sixth Circuit Court of Appeals explained in *Spectrum Health Continuing Care Group v. Anna Marie Bowling Irrevocable Trust*, 410 F.3d 304 (6th Cir.2005):

> A health-care provider is not required to participate in the Medicaid program, but rather voluntarily contracts with the state to provide services to Medicaid-eligible patients in return for reimbursement from the state at the specified

rates. *Barney,* 110 F.3d at 1211; *Linton by Arnold v. Comm'r of Health & Env't,* 65 F.3d 508, 515 (6th Cir.1995), cert. denied, 517 U.S. 1155, 116 S.Ct. 1542, 134 L.Ed.2d 646 (1996). *Though the Medicaid rates are typically lower than a service provider's customary fees, 'medical service providers must accept the state-approved Medicaid payment as payment-in-full, and may not require that patients pay anything beyond that amount.' Barney,* 110 F.3d at 1210. *Moreover, even when a third party is subsequently found liable for the Medicaid beneficiary's medical expenses, the service provider 'may not seek to collect from the individual (or any financially responsible relative or representative of that individual) payment of an amount for that service.' 42 U.S.C. § 1396a(a)(25)(c). The accompanying federal regulations mandate that a state "must limit participation in the Medicaid program to providers who accept, as payment in full, the amounts paid by the agency plus any deductible, coinsurance or copayment required by the plan to be paid by the individual."* 42 C.F.R. § 447.15.

*Spectrum,* 410 F.3d at 314 (Emphasis added).

Similarly, in *Lizer v. Eagle Air Med Corporation,* 308 F.Supp.2d 1006 (D.Ariz. 2004), the United States District Court for the District of Arizona found that this language "prevents providers from billing *any* entity for the difference between their customary charge and the amount paid by Medicaid." *Id.* 308 F.Supp.2d at 1009. Other courts have concluded that federal law precludes providers from receiving any payment beyond the amount paid by Medicaid. *Rybicki v. Hartley,* 792 F.2d 260

(1st Cir.1986); *see also Mallo v. Pub. Health Trust of Dade Cty.,* 88 F.Supp.2d 1376, 1385–87 (S.D.Fla.2000); *Palumbo v. Myers,* 149 Cal.App.3d 1020, 197 Cal.Rptr. 214, 221–22 (1983); *Rehabilitation Ass'n of Virginia, Inc., v. Kozlowski,* 42 F.3d 1444, 1447 (4th Cir.1994) ("Service providers who participate in the Medicaid program are required to accept payment of the state-denoted Medicaid fee as payment in full ... and may not attempt to recover any additional amounts elsewhere."), *cert. denied,* 516 U.S. 811, 116 S.Ct. 60, 133 L.Ed.2d 23 (1995).

■ Here, according to Lowther, Lancaster Neuroscience was a "participating provider" in the Medicaid program. By accepting DPW's payment, Lancaster Neuroscience accepted as compensation *in full* for medical services to Claimant, the payment amount specified in the Medicare Act. Lancaster Neuroscience was not authorized to recover any additional amounts from either the Claimant *or the Employer.*

■ In sum, once a medical provider accepts the DPW's Medicaid payment, it is not entitled to recover from the employer the higher rates set forth in Section 306 of the Act. Lancaster Neuroscience, Claimant's medical provider, may not collect the additional payment from Employer for services rendered to Claimant because federal law prohibits it from recovering any further amounts from Claimant or any other source.

Accordingly, Employer did not violate the Act or the C & R Agreement by refusing Lancaster Neuroscience's demand for payment. The Board correctly denied and dismissed Claimant's Penalty Petition.

The order of the Board is affirmed.[11]

---

11. It is well settled that this Court may affirm for any reason and is not limited to the grounds relied on by the Board or raised by the parties if such grounds for affirmance exist. *Motor Coils MFG/WABTEC v. Workers Compensation Appeal Board (Bish),* 853 A.2d

## ORDER

AND NOW, this 22nd day of October, 2008, the order of the Workers' Compensation Appeal Board is affirmed.

1082 (Pa.Cmwlth.2004); *Guy M. Cooper, Inc. v. East Penn School Dist.,* 903 A.2d 608 (Pa. Cmwlth.2006).