Gregory Elder,               :
                                  :
               Petitioner    :
                                    :
               v.             : No. 788 C.D. 2023
                                    : Argued:  April 9, 2024
Crane Resistoflex (Workers'     :
Compensation Appeal Board),     :
                                    :
            Respondent :


BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE STACY WALLACE, Judge
                HONORABLE MARY HANNAH LEAVITT, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                     FILED:  September 11, 2024


Gregory Elder (Claimant), through his counsel, Larry Pitt & Associates (Counsel), petitions for review of a decision of the Workers' Compensation Appeal Board (Board) affirming a workers' compensation judge's (WCJ) decision denying the contingency fee agreement between Claimant and Counsel regarding Counsel's entitlement to 20% of Claimant's medical benefits, while still approving Counsel's share of indemnity benefits.  The WCJ reasoned that, notwithstanding Claimant's intention to enter into the agreement, Claimant did not sufficiently understand its "breadth."  Upon careful review, we reverse and remand to the Board for further remand to the WCJ for proceedings consistent with the following opinion.

Claimant sustained a shoulder injury in the course and scope of his employment on July 12, 2018. WCJ's Opinion, 9/20/22, at 3.[1] Thereafter, Employer issued a Medical-Only Notice of Temporary Compensation Payable (MONTCP), which subsequently converted by operation of law. *Id.* Litigation between Claimant and Employer initially began when Employer filed a termination petition arguing that Claimant had fully recovered from his injuries and Claimant filed a review petition asserting that the MONTCP omitted some of his injuries in its description. *Id.*

Relevant now, Claimant signed a contingent fee agreement with Counsel on November 20, 2020. *See* R.R. at 60a. The fee agreement states in pertinent part:

> I recognize the contingent nature of this claim and the fact that [C]ounsel may not receive any compensation. Should no money be recovered following suit or settlement, [C]ounsel shall have no claim of any kind against me for any professional services rendered. However, once the contingency does occur, [Counsel], will receive twenty percent (20%) of all compensation payable to me for as long as I receive workers' compensation benefits. This includes payment of all medical treatment and hospital bills.
>
> * * *
>
> The contingency is the award by any [WCJ] of a fee of twenty percent deductible from any award of wage loss or medical benefits or any order permitting me to continue to receive wage loss or medical benefits. Once this contingency occurs the deduction of the twenty percent fee will continue for the full duration of the time that I continue to receive wage loss or medical benefits.

---

[1] The WCJ's Opinion, circulated on September 20, 2022, may be found in the Reproduced Record (R.R.) at 84a.

*Id.*

Claimant prevailed on both petitions before the WCJ, but both parties nevertheless appealed the WCJ's decision to the Board. WCJ's Opinion, 9/20/22, at 3. Claimant appealed because the WCJ approved the contingency fee agreement as it pertained to indemnity benefits only. *Id.* On that point, the WCJ found:

> Based on a review of the evidence as a whole, this [WCJ] finds that although Claimant testified[] he understands the fee agreement relates to both medical and indemnity, there was no testimony to indicate whether Claimant knows exactly how much his future medical expenses will be and what portion, if any, he may be liable for if a fee was awarded on his medical benefits. The fee agreement is reasonable under the [Workers' Compensation Act[2] (Act)] as it pertains to indemnity benefits only and, if and when, Claimant receives indemnity benefits, [C]ounsel's fee is approved.

WCJ Opinion, 9/2/21, at Finding of Fact (F.F.) No. 10.[3] The Board affirmed the WCJ's decision as modified in part, but remanded "for the sole purpose of accepting evidence and making appropriate findings with regard to Claimant's attorney's fees." Board Opinion, 5/6/22, at 11.[4] The Board reasoned that "[a]lthough the WCJ noted the existence of a fee agreement, there is no fee agreement contained in the record certified to us, and therefore we will remand the Decision to the WCJ." *Id.* at 10.

---

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1 - 1041.4, 2501-2710.

[3] The WCJ's Opinion, circulated on September 9, 2021, may be found in the Reproduced Record at 60a.

[4] The Board Opinion, mailed on May 6, 2022, may be found in the Reproduced Record at 71a.

3

At the July 14, 2022 remand hearing, the WCJ thought that the Board remanded "because they [sic] said they [sic] didn't have a copy of the fee agreement. However, it was attached to the deposition of [] Claimant, so I believe that was an oversight." WCJ's Hearing, Notes of Testimony (N.T.), 7/14/22, at 5. In response, Counsel asked whether the WCJ would "entertain Claimant's brief testimony" on his understanding of the fee agreement. *Id*. at 6. The WCJ expressed that she already read his testimony at the deposition, and said, "I mean if you don't think it's necessary, I don't think it's necessary to testify already." *Id*. at 6-7. The WCJ and Counsel then reviewed the deposition and determined that the matter of his agreement was sufficiently addressed. *Id*. at 7-8.

> For reference, at his February 2, 2021 deposition, Claimant testified:
>
> Q. And, [Claimant], when you signed on to have [Counsel] represent you in this case, you signed a contingent fee agreement; is that correct?
>
> A. Yes. I believe so. I signed a number of things, yes.
>
> Q. Okay. So, you signed an agreement for us to get your medical records, so a medical release document, correct?
>
> A. Yes.
>
> Q. And then you signed something that said if you get indemnity benefits, which is when you're not working, that we would get 20[%] of that; you understand that, correct?
>
> A. Yes.
>
> Q. And then you also signed an agreement that if we get your medical bills all paid, we would get 20[%] of that; do you understand that?

4

A.    Yes.

Q.    Okay.

Deposition of Gregory Elder, 2/2/21, R.R. at 15a-17a.

In a decision circulated on September 20, 2022, the WCJ once again limited the attorney's fees award to indemnity benefits only. The WCJ found the following as fact:

> Based on a review of the evidence as a whole relating to the contingent fee agreement, this [WCJ], again, finds that although Claimant [testified that] he understands the fee agreement relates to both medical and indemnity, there was no testimony presented to indicate whether Claimant knows how much his future medical expenses will be and what portion, if any, he may be liable for if the provider sought payment after attorney's fees were deducted. Claimant has been receiving medical benefits pursuant to this claim since the filing of the [MONTCP] on August 29, 2018. Claimant signed the contingent fee agreement on November 20, 2020, and continued to receive benefits pursuant to the MONTCP. Counsel had opportunities at the hearings held on November 10, 2020, December 8, 2020, June 22, 2021, and July 14, 2022, to present evidence relating to the fee agreement. As outlined above, [C]ounsel provided limited and inadequate evidence on this issue. This [WCJ] finds that Claimant did not express a complete understanding as to the medical fee arrangement and, therefore, declines to award a fee on Claimant's medical benefits.

WCJ Opinion, 9/20/22, at F.F. No. 4.

In an opinion mailed on July 3, 2023, the Board affirmed the WCJ on the same grounds. In its analysis, the Board observed that a 20% contingency fee for medical benefits is *per se* reasonable. Board Opinion, 7/3/23, at 3[5] (citing *Neves v. Workers' Compensation Appeal Board (American Airlines)*, 232 A.3d 996, 1006

---

[5] The Board Opinion mailed on July 3, 2023, may be found in the Reproduced Record at 100a.

(Pa. Cmwlth. 2020)). However, the Board agreed that Counsel failed to produce any additional evidence of Claimant's understanding of the fee agreement, "[d]espite appealing specifically on that finding [of fact.]" *Id*. at 5. Notably, however, the Board was split on this issue.[6] One commissioner dissented, writing: "I agree with Claimant's appeal and would modify the [WCJ's] order to award a 20% contingency fee including medical in accordance with *Neves*." *Id*. at 12.

Claimant filed the instant Petition in this Court on July 19, 2023. Therein, he argued that the WCJ impermissibly declined to approve the fee agreement as it pertains to medical benefits. Petition ¶¶2-3. On appeal,[7] Claimant argues that the WCJ impermissibly refused to approve the contingency fee agreement as it pertains to medical benefits. We agree.

Primarily, Claimant argues that our holding in *Neves* requires the WCJ to approve a 20% contingency fee for both indemnity and medical benefits without further analysis. Petitioner's Brief at 12. Claimant concedes, however, that the fee agreement controls, and Claimant must establish that the parties entering into the fee agreement intended attorney's fees to apply to the entire award. *Id*. On this point, Claimant argues his counsel did just that by submitting the signed fee agreement as well as a transcript of Claimant's testimony, wherein he stated he understood the terms of the agreement to apply to his medical benefits as well as his indemnity

---

[6] Two commissioners joined the opinion, but another commissioner concurred in the result only based on a collateral issue, while two commissioners dissented. *See* Board Opinion, 7/3/23. The second dissenting commissioner did not specify his reason for dissenting. *Id*.

[7] Our "review is limited to a determination of whether there has been an error of law, whether constitutional rights were violated, or whether necessary findings were supported by substantial evidence." *Jamieson v. Workmen's Compensation Appeal Board (Chicago Bridge & Iron)*, 691 A.2d 978, 982 (Pa. Cmwlth. 1997). "Substantial evidence is such relevant evidence a reasonable mind might accept as adequate to support a conclusion." *WAWA v. Workers' Compensation Appeal Board (Seltzer)*, 951 A.2d 405, 407 n.4 (Pa. Cmwlth. 2008).

benefits. *Id*. at 12-13. In effect, Claimant contends that the Board is treating the evidentiary burden required to establish Claimant's intent too onerously. *Id*. at 14. In Claimant's view, the Board "incorrectly requires Claimant [to] undertake risk assessment and conclude[s] that the future medical bills for which the fee is asserted are too speculative. Nothing in *Neves*[] requires this degree of inquiry." *Id*.

Furthermore, Claimant believes that the Board's fears are misplaced. Claimant avers that the General Assembly has expressly forbidden medical providers from pursuing any outstanding balance from employees being treated under the Act, *i.e.*, "balance billing," and that the Board's regulations include an analogous provision. Petitioner's Brief at 17-18 (citing Section 306(f.1)(7) of the Act, 77 P.S. §531(7);[8] Section 127.211 of the Board's regulations, 34 Pa. Code §127.211. Thus, in this respect, Claimant argues that he is immune from balance billing and his liability regarding future medical expenses is sufficiently definite. Petitioner's Brief at 19.

In response, Employer reiterates the reasoning of the WCJ and the Board. Employer argues that "Claimant cannot agree to that which he does not understand[,]" and, here, Claimant does not understand the effect the contingency fee will have on his future medical expenses. Respondent's Brief at 9. Employer claims that the *Neves* Court awarded attorney's fees against medical benefits because, therein, the fee agreement contemplated "any benefits awarded" and the claimant acknowledged, by affidavit, a potential conflict of interest could exist between claimant and counsel if medical providers sought the remaining balance of medical expenses from a claimant. *Id*. at 13-14.

---

[8] Added by the Act of July 2, 1993, P.L. 190.

Employer concedes that, here, the fee agreement pertains to both medical and indemnity expenses. Respondent's Brief at 14. However, Employer argues: (1) it is unclear if Claimant's testimony refers to the fee agreement or another agreement; and (2) evidence of record does not demonstrate Claimant understood the fee agreement to apply to future medical benefits. *Id*. at 15. Regarding the latter concern, Employer seizes on Counsel's phrasing during the February 2, 2021 deposition: "[I]f we get your medical bills all *paid*." *Id*. (emphasis added). In Employer's view, the use of the past tense only evidences Claimant's understanding that the fee agreement would apply to past due medical benefits, rather than to future medical benefits. *Id*. "There is no clear indication that [] Claimant was aware that a fee would likewise also be deducted from ongoing future bills that were not yet in existence [] (and as such, not capable of being paid yet)." *Id*. Thus, unlike the claimant in *Neves*, here, Claimant has not indicated that he understands that medical providers may seek to recover the balance of medical expenses from him, should they be dissatisfied with the 80% received after the 20% attorney's fee deduction. *Id*. at 16. Further, Employer believes the WCJ and the Board do not require too stringent an understanding of future medical benefits. Employer contends that Claimant's understanding of his liability need not be based on definitive figures, but rather a simple understanding that he may bear financial responsibility for any unpaid medical expenses resulting from the fee agreement. *Id*. at 16-18. Finally, Employer rejoins that Section 306(f.1)(7) of the Act and Section 127.211 of the Board's regulations do not immunize Claimant from balance billing where the shortfall is a result of a fee agreement, but only shortfalls caused by an "operation of law." *Id*. at 17 n.1 (emphasis omitted).

Initially, Section 442 of the Act, provides in relevant part:

8

> All counsel fees, agreed upon by claimant and his attorneys, for services performed in matters before any [WCJ] or the [B]oard whether or not allowed as part of a judgment, shall be approved by the [WCJ] or the [B]oard as the case may be, providing the counsel fees do not exceed twenty per centum of the amount awarded.

77 P.S. §998.[9]  The Supreme Court has explained that the purpose of this section is to protect claimants "against unreasonable fees charged and imposed on them by their attorneys under their own improvident fee agreements." *Weidner v. Workmen's Compensation Appeal Board (Firestone Tire & Rubber Co.)*, 442 A.2d 242, 244 (Pa. 1982).  To that end, it is essential that a claimant understand the fee agreement.  "The claimant should understand that a fee may be taken not only on retroactive compensation owing, but on continuing, future payments  . . . ."  D. Torrey & A. Greenberg, Workers' Compensation Law & Practice §17:29 (West 2022) (hereinafter, Torrey & Greenberg 2022).

Critical to the case before us, we interpreted Section 442 in *Neves*. Therein, the claimant signed a fee agreement stating, "I agree to pay my attorney a sum equal to 20% percent [sic] of whatever may be recovered from said claim . . . ." *Neves*, 232 A.3d at 999.  Additionally, the claimant submitted an affidavit stating:

> I entered into a fee agreement with my attorney for twenty (20%) percent of whatever benefits I received.  I understand that that applies to past due medical expenses as well as any wage loss benefits.  It is my understanding that providers may seek the balance of the twenty (20%) percent of the bill from me should they be dissatisfied with the eighty (80%) percent they will receive.  I entered into this fee agreement with full understanding with my rights and liabilities.

*Id.*

---

[9] Added by Section 3 of the Act of February 8, 1972, P.L. 25.

In pertinent part, we considered whether Section 442 treats medical benefits and indemnity benefits synonymously for purposes of the WCJ approving a contingency fee, *i.e.*, whether a 20% fee agreement for medical benefits is *per se* reasonable. *Neves*, 232 A.3d at 1000. While reviewing the legislative history of Section 442 and our own case law, we observed that *Koszowski v. Workmen's Compensation Appeal Board (Greyhound Lines, Inc.)*, 595 A.2d 697, 702 (Pa. Cmwlth. 1991), issued a remand instruction directing the WCJ to conduct a *quantum meruit* analysis before awarding attorney's fees for medical expenses under Section 442, following the instruction in *Wommer v. Workmen's Compensation Appeal Board (Lycoming County)*, 479 A.2d 661, 663 (Pa. Cmwlth. 1984). *Neves*, 232 A.3d at 1005.

However, on this point, we found that we may have erred in *Koszowski*. *Wommer* considered attorney's fees arising under Section 440 of the Act,[10] rather than Section 442. *Id.* at 1005. This distinction was critical, because Section 440 explicitly directed a *quantum meruit* analysis, whereas the version of Section 442 before this Court in *Koszowski* did not. *Id.* In any event, we found the plain language of the current Section 442 and the remand instruction ordered in *Koszowski* to be incompatible. *Id.* at 1005-06. Altogether, we ascertained two key principles:

> First, the counsel fee should be calculated against the entire award, without regard for whether the award is for medical or indemnity compensation. Second, the terms of the fee agreement govern, and it is incumbent upon the claimant to establish that the parties intended the counsel fee be applied to the entire award, including medical compensation.

*Neves*, 232 A.3d at 1005 (citations omitted). Therefore, we held:

---

[10] Section 440(a) of the Act, added by the Act of February 8, 1972, P.L. 25, 77 P.S. §996(a).

> Section 442 does not distinguish between the type of compensation awarded; does not require an inquiry into the reasonableness of a 20% fee agreement; and does not make the amount and degree of difficulty of the work performed by the attorney relevant. A 20% counsel fee is *per se* reasonable.

*Id*. at 1006-07.

In applying the facts before it in *Neves*, this Court noted that the fee agreement contemplated all benefits awarded, including medical expenses. *Neves*, 232 A.3d at 1006. Further, the claimant's affidavit demonstrated that he understood the agreement and its impact on future medical expenses, because it expressly acknowledged his liability to medical providers for the 20% withheld from the award for attorney's fees. *Id*. Notably, this addressed the balance billing concern raised in *Koszowski*, 595 A.2d at 702 n.6 ("Furthermore, if twenty percent of medical expenses is to be awarded to [the c]laimant's attorney, then the question arises as to who is responsible for the balance of medical expenses due the medical supplier."); *id.* at 702 (Pelligrini, J., concurring) ("Troubling is who represents claimant, where, as here, claimant's counsel is seeking an increase in his fee which the claimant, rather than the employer, is the one obligated to pay."). *Neves*, 232 A.3d at 1006. Hence, although this Court in *Neves* found *Koszowski's* remand instruction for a *quantum meruit* analysis to be incompatible with Section 442, we nevertheless considered *Koszowski's* concern regarding employee liability significant. As such, the *Neves* Court found the WCJ erred in refusing to approve the fee agreement, because a 20% fee for medical expenses is *per se* reasonable and because of the evidence of record which indicated the claimant's understanding of, and agreement to, the contingency fee. *Id*. at 1006-07.

For some time, the question of who is responsible for the unpaid portion of the fee due to the medical provider remained unanswered. As indicated,

11

Employer's fear that Claimant would be responsible for this unpaid portion of the fee is traceable to our own case law; however it also stems from the purpose of the balance billing prohibition. In part, Act 44[11] sought to curb mounting medical costs to employers in workers' compensation cases by "repricing" the amount a provider "may charge or accept as payment for health services to 113% of the prevailing" Medicare rate. *See Pennsylvania State Police v. Workers' Compensation Appeal Board (Bushta)*, 184 A.3d 958, 969 n.9 (Pa. 2018) (citing 77 P.S. §531(3)(i); *Jaquay v. Workers' Compensation Appeal Board (Central Property Services)*, 717 A.2d 1075, 1077 (Pa. Cmwlth. 1998)).

To protect claimants from any consequent shortfalls caused by this repricing, Act 44 also added Section 306(f.1)(7), which states:

> A provider shall not hold an employe liable for costs related to care or service rendered in connection with a compensable injury under this [A]ct. A provider shall not bill or otherwise attempt to recover from the employe the difference between the provider's charge and the amount paid by the employer or the insurer.

77 P.S. §531(7).

Likewise, Section 127.211(a) of the Board's regulations, provides:

> A provider may not hold an employe liable for costs related to care or services rendered in connection with a compensable injury under this [A]ct. A provider may not bill for, or otherwise attempt to recover from the employe the difference between the provider's charge and the amount paid by an insurer.

34 Pa. Code §127.211(a); *see also Nickel v. Workers' Compensation Appeal Board (Agway Agronomy)*, 959 A.2d 498, 505 (Pa. Cmwlth. 2008) ("It is well settled that a medical provider is prohibited from attempting to collect from the

---

[11] Act of July 2, 1993, P.L. 190, No. 44.

12

claimant/employee the difference between the provider's charge and the amount paid by the employer or workers' compensation carrier.").

As mentioned above, the fear that Section 306(f.1)(7)'s balance billing prohibition protects claimants from balance billing in the exclusive context of repricing and cost containment, rather than in the context of attorney's fees, has been acknowledged in our case law. For example, in *Righter v. Workers' Compensation Appeal Board (Righter Parking)*, 141 A.3d 628, 634 (Pa. Cmwlth. 2016), we recognized that after an attorney takes his or her share of the repriced medical benefits awarded, a shortfall will nevertheless exist. "The shortfall will, presumably have to be made up by the employee. A physician or other health care provider is *not* prohibited from balance[]billing within the confines of the Medicare-based scheme." *Id.* (quoting D. Torrey & A. Greenberg, Workers' Compensation: Law and Practice §15:12 (West 2008)) (emphasis added). So too have treatises recognized this potential shortfall: "[P]hysicians typically expect 100% [] of their bills to be paid, and typically expect the claimant to make up any shortfall which, for whatever reason, exists . . . hence some level of tension may exist between [] counsel and his or her client when such fee agreements have been executed." Torrey & Greenberg 2022 §15:14.

Employer's fears are no longer well placed, however. After the parties before us submitted briefing on the instant matter, but prior to oral argument, a panel of this Court dispelled the fears regarding balance billing now raised by Employer and as previously described in our case law. In *Williams v. City of Philadelphia (Workers' Compensation Appeal Board)*, 312 A.3d 976 (Pa. Cmwlth. 2024), we considered whether Section 306(f.1)(7) only narrowly applied to cost containment or whether "it prohibited a provider from billing a claimant for any costs related to

13

care provided under the Act and any amounts reflecting the difference between the provider's charge and the amount paid." *Id*. at 990. We rejected the concerns described in *Righter* as mere *dicta* and held that Section 306(f.1)(7) should be read "plainly and without qualification." *Id*. at 989-90. In fact, relying on *Neves*, 232 A.3d at 1007-08, we observed that a provider's recourse in seeking the unpaid portion of their fee is to seek a fee review under Section 306(f.1)(5) of the Act, 77 P.S. §531(5).[12] *Williams*, 312 A.3d at 990. Therefore, we stated unequivocally: "A medical provider that provides medical services to treat a compensable injury under the Act may not recoup directly from a claimant any portion of any payment deducted to pay a counsel fee." *Id*.

Here, by the terms of the WCJ's own decision, Claimant testified that "he understands the fee agreement relates to both medical and indemnity[.]" WCJ's Op., 9/20/22, at F.F. No. 4. However, the WCJ reasoned that Claimant's understanding was insufficient because there was no testimony indicating whether Claimant understood that he may be liable to his medical providers for any future unpaid portion of his medical expenses relating to his compensable injury. *Id*. Because we have determined that a 20% contingency fee for indemnity benefits is *per se* reasonable, *see Neves*, 232 A.3d at 1007-08, and because we have determined that the balance billing prohibition under Section 306(f.1)(7) of the Act would

---

[12] Section 306(f.1)(5) of the Act provides in pertinent part:

> A provider who has submitted the reports and bills required by this section and who disputes the amount or timelines of the payment from the employer or insurer shall file an application for fee review with the [Department of Labor and Industry] no more than thirty (30) days following notification of a disputed treatment or ninety (90) days following the original billing date of treatment.

77 P.S. §531(5).

protect Claimant in such a case, *see Williams*, 312 A.3d at 990, the WCJ erred in determining that Claimant's testimony was insufficient to warrant the approval of the fee agreement as to both medical and indemnity benefits awarded in this matter.[13]

Accordingly, the Board's order is reversed, and we remand the above-captioned matter to the Board with instructions to remand to the WCJ to consider approval of the fee agreement, as it pertains to attorney's fees, consistent with the foregoing opinion.

_____
MICHAEL H. WOJCIK, Judge

Judge Fizzano Cannon did not participate in the decision of this case.

---

[13] Moreover, despite the Board's initial remand to the WCJ to elicit further testimony regarding Claimant's understanding of the fee agreement, the WCJ mistakenly believed that it was remanded because of the Board's own oversight. As a consequence, the WCJ effectively precluded Claimant from introducing further testimony regarding his understanding of the fee agreement and his own liability. This WCJ error also militates in favor of reversing the Board's opinion in this regard and remanding for further consideration by the WCJ.

15

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gregory Elder,                          :
                                        :
                    Petitioner          :
                                        :
          v.                            :  No. 788 C.D. 2023
                                        :
Crane Resistoflex (Workers'             :
Compensation Appeal Board),             :
                                        :
                    Respondent          :


# **O R D E R**


AND NOW, this 11th day of September, 2024, the order of the Workers' Compensation Appeal Board dated July 3, 2023, is **REVERSED**. This matter is **REMANDED** to the Workers' Compensation Appeal Board with instructions to remand to the Workers' Compensation Judge for further proceedings consistent with the foregoing opinion.

Jurisdiction is relinquished.


_____
MICHAEL H. WOJCIK, Judge